EDWARD SOLOMON, respondent,

*v.*

ALBERT M. CANTER, FLORENCE CANTER and DIME SAVINGS INSTITUTION, appellants.

[Submitted February term, 1933. Decided April 27th, 1933.]

*Messrs. Williams & Leonard,* for the appellants.

*Mr. William J. Kearns,* for the respondent.

The opinion of the court was delivered by

LLOYD, J.

On bill to foreclose a mortgage complainant obtained a decree awarding priority to the mortgage over the fee-simple title of the defendants Canter and over a mortgage held by the Dime Savings Institution on a property in the city of Newark.

The essential facts as stipulated by the parties, established that one Connolly obtained title to the property on July 1st, 1924, at the same time executing the mortgage now being foreclosed to his grantor. This mortgage was not recorded until January 12th, 1925.

On December 9th, 1924, Connolly conveyed the premises to one Evans and on December 23d, 1924, both the deed to

Connolly and the deed to Evans were recorded. Evans died on January 24th, 1925, and the property was re-conveyed to Connolly by Evans' heirs on February 7th, 1925, the deeds effecting the reconveyance being recorded two days later.

On November 16th, 1925, Connolly conveyed to the Canters, the present owners and defendants in this case. The mortgage to the savings institution was executed by the Canters on the same day and both deed and mortgage were recorded two days later.

It is conceded that the record exhibited to the appellants no indication of the existence of the complainant's mortgage other than is disclosed by the mortgage itself and the recording in January, 1925. It is also conceded that the grantees in the deeds and the savings institution were without actual knowledge of its existence.

The respondent on this appeal contends that because Connolly, knowing of the mortgage, became repossessed of the property a few weeks after the sale and recording of the deed from Connolly to Evans, there was imposed on the appellants an obligation to make a continuous search against him from the inception of his first title in July, 1924, until the sale to the Canters in November, 1925.

We fail to see force in this contention. The pertinent legislation controlling the recording of such instruments as are here involved and the effect of such legislation is to be found in section 54 (*2 Comp. Stat. p. 1553*), which provides that deeds and mortgages (as well as other instruments) shall, until recorded, "be void and of no effect against * * * all subsequent purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed or mortgage shall have been first duly recorded."

There can be no doubt that the deed to Evans was recorded before the complainant's mortgage was placed on record, or that by that deed he took a title in fee-simple freed from complainant's mortgage in the absence of actual notice of its existence. The title thus transferred imposed on a later purchaser only the duty to search against Connolly during the period in which the record disclosed the title to be in him,

and likewise to search against Evans up to the recording of the deed back to Connolly. The fact that Connolly, who of course happened to know of the existence of complainant's mortgage, was the purchaser could make no difference in the obligations or rights existing by virtue of the registry acts. Apart from his personal knowledge he would have taken the property clear of the mortgage. When, thereafter, he sold to the Canters they were under no obligation to search the title against others than those whom the records disclosed to be the owners. The personal knowledge of Connolly could not be imputed to them any more than like knowledge could be imputed to Evans when he purchased a year before. Neither the personal knowledge of Connolly nor the fact that he took an intervening title imposed on the defendant a duty to search outside the title as it appeared in the record. By such a search complainant's mortgage would not be disclosed.

The very purpose of the recording acts is the protection of purchasers and encumbrancers of real property against undisclosed titles and liens, and such purpose would be wholly frustrated if the decree entered in this case were to be sustained. If the obligation to examine the title of Connolly existed for a day, a week or a month after the title had passed from him, then there is no limit to the period of search. The recording acts would be futile in their effects and conveyancing would become an intolerable burden of labor and expense and countless titles rendered insecure.

The system of searching as stated by Mr. Justice Reed fifty years ago, in the case of *Bingham* v. *Kirkland, 34 N. J. Eq. 229, 234,* to be, "to trace the line of record title and search against each owner during the period that he held the title," is the system prevailing to-day, and members of the bar, accustomed to search only during such period, would receive a shock if now told that the repurchase by a former owner or the grantor's personal knowledge of undisclosed liens were to entail a different rule.

The decree is reversed with direction to enter a decree in accordance with this opinion.

*For affirmance*—None.

*For reversal*—TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 13.