159 N.J. Super. 287 (1978)
387 A.2d 1233
PALAMARG REALTY COMPANY AND WORLD WIDE SEARCHERS, INC., PLAINTIFFS-APPELLANTS,
v.
JOSEPH REHAC AND ALEXANDER PIATKOWSKI, A NEW JERSEY PARTNERSHIP, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1978.
Decided May 10, 1978.
*289 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Louis A. Veronica argued the cause for appellants (Messrs. Veronica & Meloni, attorneys).
*290 Mr. Frans M. De Nie argued the cause for respondents (Messrs. Pascoe, Woodward, De Nie & Giampetro, attorneys; Mr. William H. Woodward on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
The parties to this action, two competing groups of land speculators, each claim title to a 429-acre tract of land in Burlington County. There being no genuine issue of material fact, each moved for summary judgment quieting its respective title. Plaintiffs appeal from the trial judge's denial of its motion and grant of defendants.
Each of the competing chains of title here derives from a common grantor, The Asbury Company. Insofar as the record shows The Asbury Company sometime prior to February 1913 acquired title to two large tracts of land in Burlington County. One such tract had apparently been conveyed to it by J. Randolph Appleby, The Asbury Company's president, Appleby having acquired the tract from Walter and Elizabeth Pharo in 1900. The other tract had been conveyed to it by the Appleby & Wood Company which had acquired it in 1899 from Andrew and Mary Bogert and Cornelius Christy. All of these referred-to conveyances which resulted in The Asbury Company's title were duly recorded.
On February 12, 1913 The Asbury Company by quitclaim deed conveyed both of the tracts, described by back title recitations, to Appleby Estates, another company of which J. Randolph Appleby was president. This deed was recorded on February 18, 1913, six days later. On February 15 of the same year, The Asbury Company conveyed to one Robert E. Taylor for a stated consideration of $825 a 429-acre portion of the Pharo tract, particularly described by metes and bounds. That deed, a bargain and sale deed, containing no back title recitations, was not recorded until April 25, 1913. Plaintiffs claim through The Asbury Company-Appleby *291 Estates chain. Defendants claim through The Asbury Company-Robert E. Taylor chain.
The next recorded instrument in The Asbury Company-Appleby Estates chain is a deed back from Appleby Estates to The Asbury Company dated January 7, 1924. This deed conveys to The Asbury Company, together with other tracts, the two tracts The Asbury Company had conveyed to it 11 years before described by the original back title recitations. The 1924 deed back, however, purported to except from the Pharo tract some 19 separate parcels purportedly theretofore conveyed out by Appleby Estates, each such parcel described only as an amount of acreage to a named grantee. The reconveyance by Appleby Estates to The Asbury Company of the Bogert tract was subject to three such exceptions. One of the Pharo tract exceptions is described simply as "429 Acres to Robert E. Taylor." No recording information, back title information, metes and bounds description, or indeed any other identification of the purported exception is stated. There was, of course, no conveyance at all by Appleby Estates to Taylor. The 1913 conveyance to Taylor had been by The Asbury Company.
The recent history of the Appleby Estates chain commenced in 1966 with the first recorded conveyance in that chain since the 1924 deed. On August 15, 1966 Appleby Estates and Appleby & Wood Company, by their surviving director and trustee in dissolution, joined with The Asbury Company as grantors in a quitclaim deed conveying to the Anthony J. DelTufo Agency, Inc. "all of the real property owned by the grantors herein wherever situate within the boundaries of the County of Burlington in the State of New Jersey." The title, if any, thus obtained by Anthony J. DelTufo Agency, Inc. was acquired by plaintiff by mesne conveyances.
The history of the Taylor chain is characterized essentially by similar recent activity. In 1932 Taylor conveyed by recorded deed to one Ruth McCrea. In 1963 Ruth McCrea *292 conveyed to the Kupire Corp. defendants grantor, who conveyed to defendants in 1973.[1]
Based on this factual complex, all a matter of title record in Burlington County, the trial judge concluded that the Taylor chain was superior to the Appleby Estates chain. His first basis for this conclusion was that Taylor, having taken title prior to the recording of the Appleby Estates deed, was entitled to rely on there having been no intervening conveyance. He also concluded that it was the presumed intention of The Asbury Company to have excepted from the conveyance to Appleby Estates that portion of the Pharo tract which it apparently had already planned to convey to Taylor and which it did so convey three days later. In our view the judge erred with respect to both of these grounds by misapplying the provisions of the recording statutes of this State and the public policy consideration underlying them. For the reasons hereafter set forth, we have no doubt that the Appleby Estates title was, in 1913, superior to that of Taylor, and the only real question here involved relates to the significance to be accorded to the 1924 deed back from Appleby Estates to The Asbury Company.
Since 1898, and by reason of the adoption of what is now N.J.S.A. 46:21-1 and 46:22-1, New Jersey has been a relatively strict record-notice state. N.J.S.A. 46:21-1 provides simply that a recorded deed is notice to all of its execution and of its contents. N.J.S.A. 46:22-1 provides that every recordable instrument
* * * shall, until duly recorded * * * be void and of no effect * * * against all subsequent bona fide purchasers * * * for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or registered * * *,
*293 The fundamental purpose of our recording legislation is clearly to provide stability and certainty in land ownership by permitting subsequent takers in a chain to rely on what the record shows. Thus, as this court has recently observed, "Public policy requires that the Recording Act should be strictly construed." N.J. Bank v. Azco Realty Co., Inc., 148 N.J. Super. 159, 166 (App. Div. 1977). And see VanDyke v. Carol Building Co., 36 N.J. Super. 281, 286 (App. Div. 1955); Glorieux v. Lighthipe, 88 N.J.L. 199 (E. & A. 1915). The objective of stability and certainty of titles has indeed led one commentator to characterize the public policy of the act as one "clearly favoring the recording purchaser at the expense of the non-recording prior purchaser" and to observe that implementation of this policy requires "first, that the recording purchaser be favored with all presumptions as to law and fact; and, second, that he be charged only with such notice from the records as can be ascertained by a reasonable search of those records." Jones, "The New Jersey Recording Act ____ A Study of its Policy," 12 Rutg. L. Rev. 328, 334 (1958). With respect to the first of these requirements, see Venetsky v. West Essex Bldg. Supply Co., 28 N.J. Super. 178 (App. Div. 1953), holding that
Where it is made to appear that one has acquired title to property and has paid a valuable consideration therefor, the purchaser is presumed to be a bona fide purchaser for value without notice until the contrary appears, and the burden of showing to the contrary rests upon the party alleging that title was acquired by the purchaser with notice of an outstanding equity or claim. [at 187]
With respect to the second of these requirements, the operative principle of Solomon v. Canter, 113 N.J. Eq. 43 (E. & A. 1933) defines the "reasonable search." In order to avoid an intolerable burden on the searcher, it is the holding of Solomon that he need search the record in respect of each grantor in the chain only for the period of time in which that grantor was in title before he conveyed out to the next *294 grantee in the chain. See also, Glorieux v. Lighthipe, supra, holding that
The record is held to be constructive notice because a man is bound to examine his own title or take the risk of not doing so. A purchaser may well be held bound to examine or neglect at his peril, the record of the conveyances under which he claims; but it would impose an intolerable burden to compel him to examine all conveyances made by every one in his chain of title. [88 N.J.L. at 203]
The necessary corollary of Solomon is that subsequent purchasers in the chain are not bound by actual notice which predecessors in the chain may have had as to outstanding claims. The hypothetical example posited by Jones, supra at 337 is this:
A conveys to B who does not record immediately. A conveys to C who has actual notice of B's deed. B records. C conveys to D who records and does not know of the deed to B.
If we assume that C recorded before B recorded then D's title prevails over B's. That result is required by the record-notice policy of the Recording Act, since as Solomon notes:
The very purpose of the recording acts is the protection of purchasers and encumbrances of real property against undisclosed titles and liens * * *. If the obligation to examine the title of * * * [a grantor in the chain] existed for a day, a week or a month after the title had passed from him, then there is no limit to the period of search. The recording acts would be futile in their effects and conveyancing would become an intolerable burden of labor and expense and countless titles rendered insecure. [113 N.J. Eq. at 45].
In applying these principles here there is one further element of the statutory complex we must consider and that is N.J.S.A. 46:22-2, adopted in 1928 and providing that with respect to every deed of conveyance "heretofore or hereafter" made, references therein to unrecorded exceptions from the conveyance made thereby are void as against subsequent bona fide purchasers. N.J.S.A. 46:22-2 reads in full as follows:
*295 Whenever, heretofore or hereafter, a deed of conveyance of real estate shall have been made by a general description, by metes and bounds or otherwise, and such deed shall contain a clause excepting all lots or parts of the real estate described in such deed, which may have been theretofore sold or conveyed, or other words indicating that some parts of the real estate described had been theretofore sold or conveyed, or that only such portion of the real estate described in such deed then remaining unsold or conveyed were intended to be conveyed by such deed, or a general exception or reservation as to the conveyance of any portion of such real estate by prior owner or owners, such exceptions or reservations shall be void and of no effect against subsequent bona fide purchasers and mortgagees in good faith, for a valuable consideration, not having any other notice of any conveyance or conveyances made by such prior owner or owners than the notice contained in the deed containing such exceptions, unless the deed or deeds of conveyance made by such prior owner or owners, and to which any such exception or reservation may refer, shall, within five years of the date of record of the deed or deeds containing the exceptions or reservations as aforesaid, be recorded in the office of the county recording officer of the county in which such real estate is situate.
This provision, however, as pointed out by Jones, supra at 352, 353, was a codification of earlier case law concluding that, in effect, "a purchaser is not bound to inquire as to the contents of recordable but unrecorded instruments referred to in his chain of title." See, e.g., Roll v. Rea, 50 N.J.L. 264 (Sup. Ct. 1888).
Analyzing the two competing chains before us in the light of the provisions and policies of the recording legislation and from the point of view of the two groups of strangers to the title who came upon the scene in the last decade and a half, we are satisfied that plaintiffs must prevail. First, with respect to the Taylor chain, it is clear that each grantee in turn, including Taylor himself, had he searched the records before recording his own deed, would have discovered the first-recorded deed to Appleby Estates since each would have been obligated to examine The Asbury Company's title from the time it took title until the recording of its deed to Taylor, and that examination would have revealed the prior deed. And each in turn, but most particularly Taylor himself, who may well, if we chose to speculate, *296 have been victimized by the inadvertent or intentionally fraudulent act of the Appleby interests, could then have taken steps, by way of negotiation or litigation to perfect the chain of title initiated by the Taylor deed before other interests, i.e., purchaser for value, had intervened to cut off that chain. In respect of plaintiffs' chain, the obligation to search The Asbury Company's original title terminated with the 1913 deed to Appleby Estates. Plaintiff was not required to search for subsequently recorded conveyances out of The Asbury Company and was, therefore, without record-notice of the conveyance to Taylor or the chain out of Taylor. By the same token, the next search would have been limited to the period in which Appleby Estates was in title before conveying back to The Asbury Company in 1924. The exception in the 1924 deed back of 429 acres to Robert E. Taylor theretofore conveyed out by Appleby would have given record notice of nothing. First, a search for an intervening conveyance by Appleby to Taylor would have been futile since Appleby had never conveyed to Taylor. Furthermore, The Asbury Company, by virtue of N.J.S.A. 46:22-2, at least in retrospect and from present perspective, would not have been bound by the exception except by actual knowledge which does not bind subsequent purchasers. Thus the searcher, 40 years later was entitled to assume that The Asbury Company took the entire tract from Appleby Estates, including what was purported to have been excepted. Therefore, from present perspective, the 1924 deed resulted in title to the excepted parcel in The Asbury Company, who then joined in the conveyance out in 1966 to DelTufo. That chain is prior, unbroken and without record notice of the competing interest. We are further satisfied that if the searcher by his diligence discovered the deed into Taylor, which he was not bound to have done, all he then would have had would have been record notice of a subsequently recorded deed which he was entitled to disregard absent actual notice or the presence of some other prevailing present *297 equity discernible dehors the record. The existence of neither of these circumstances is suggested here.
We noted at the outset that both parties here concede that they are land speculators. We do not intend to ascribe opprobrium to that description. In our view persons who, for a hoped-for profit, are willing to undertake the risk and expense of clearing title to theretofore dormant land perform a useful social function by restoring that land to the conveyable and, therefore, developable stock of this State's real estate. We emphasize that there is no suggestion that we are here dealing with the so-called "title raider" who seeks technical flaws in title in order to upset existing equities and clearly vested rights. Cf., Bron v. Weintraub, 42 N.J. 87 (1964). In the absence of those countervailing and perhaps prevailing considerations, we are satisfied that it is only by insisting on strict construction of recording legislation that we can protect title to real estate from chaotic interference and encourage the safe, orderly, secure and reliable transfer of land.
Reversed and remanded for entry of judgment in favor of the plaintiffs.
NOTES
[1] It should be further noted that there have also been of relatively recent date ancillary conveyances in both chains obviously intended to perfect each of the chains in respect of any possible outstanding claims. There is no suggestion here that either of the chains is unperfected, the sole question being which of the two chains is superior.