178 N.J. Super. 611 (1981)
429 A.2d 1084
JOSEPH BERMAN AND PHYLLIS H. BERMAN ET AL., PLAINTIFFS,
v.
MAX GURWICZ, EDWARD GURWICZ, A/K/A HERZEL GURWICZ ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided January 14, 1981.
*613 William W. Shultz for plaintiffs (Alten, Valentine, Seltzer & Shultz, attorneys).
Leonard C. Horn for defendants (Horn, Kaplan, Goldberg & Gorny, attorneys).
*614 HAINES, J.S.C.
The Regency Towers is a condominium situated at 5200 Boardwalk in Ventnor, New Jersey. The individual plaintiffs purchased condominium units at the Regency; some executed their purchase agreements prior to the construction of the development, others afterward. The Regency Towers Condominium Association is a plaintiff which represents all owners of units at the Regency. These units are subject to a lease entitled "Recreation and Health Unit Agreement," entered into between the Regency Towers, as landlord, and the Regency Towers Condominium Association, as tenant. The lease was executed and recorded prior to the sale of any units and therefore at a time when the tenant association was controlled by the landlord-owner. It runs for a term of 90 years and covers a recreation area, including a swimming pool, which is a part of the building complex. The initial annual rent is $30,000, increasing gradually until it reaches $48,000 in the seventh year. This rent is collected from the unit owners by the Association as part of a monthly maintenance fee and paid to the landlord.
The suit sounds in fraud. It seeks damages and the cancellation of the recreation lease. Thirteen of the individual plaintiffs claim that representations were made to them, prior to their execution of purchase agreements, that the recreation area covered by the lease belonged to the owners of the units, the cost of its operation to be included in the monthly maintenance payment to be made by them. The remaining ten plaintiffs claim that they were told nothing about the recreation lease prior to their execution of the purchase agreements. In addition, they point to pictures of the Regency, contained in a brochure which they received before agreeing to buy, which show the recreation area as part of the complete Regency structure. Since the brochure includes this diagram and does not mention the lease, it is therefore said to constitute a misrepresentation.
*615 The purchase agreements, executed by all plaintiffs, were essentially the same. They provided that the buyers' rights were "... fully and completely subordinate and under and subject to all construction loans, mortgages and related liens heretofore or hereafter made in connection with development of the project by seller ... without execution of any further legal documents by buyer." Marketable title was to be conveyed subject to these provisions. The agreements provided that: "Buyer subscribes to the Master Deed and Association By-Laws which are incorporated herein by reference and copies of which will be furnished to Buyer prior to settlement." By signing the purchase agreements the buyers consented to amendments, not only to the agreements, but also to the master deed, by-laws and other condominium documents, and appointed the seller an attorney-in-fact for the purpose of executing writings which would effectuate such amendments. No specific reference to a recreation lease is to be found in any sales agreement, although the quoted language was sufficiently broad to permit the subordination of the purchasers' interests in their units to that lease.
Prior to settlement the seller recorded the condominium documents, which consisted of a master deed, the by-laws of the condominium association and the recreation lease, and delivered copies, together with a management contract, to all purchasers at or prior to settlement. The master deed, in words and through exhibits, delineates the common areas owned by all unit purchasers. The recreation area is not a part of these areas. The deed specifically authorized the condominium association to enter into a lease covering the recreation area and reserved to the developer the right to sign the recreation lease on behalf of all contract purchasers and unit owners for a period of five years. The association by-laws authorized the condominium association to lease the recreation facilities from the grantor. The lease itself referred to the master deed and an attached exhibit showing the recreation area colored in purple. The management agreement empowered a manager to collect assessments for common expenses and rents for the recreation facilities. *616 At settlement every purchaser received a title report, which stated that the insurance policy to be issued would be "subject to the rules, regulations and by-laws of the Regency Towers" and also listed as an exception "conditions, reservations and restrictions as imposed in the master deed of Regency Towers." The deed received by each purchaser refers to the condominium documents and requires the signature of each purchaser as well as the grantor. Plaintiffs, while admitting that they did not read these documents, did not otherwise receive any actual information concerning the recreation lease, and argue that the recording of the condominium documents did not provide them with effective constructive notice.
These are the circumstances upon which plaintiffs base their claims of fraud. Defendants deny that any representations were made concerning the lease of the recreation area, point to the fact that four of the purchasers were attorneys, 11 were represented by attorneys and all were business sophisticates; they underline the additional fact that the condominium documents were not only given to plaintiffs, as acknowledged by their receipts, but also were recorded, thereby providing both actual and constructive notice of the existence of the lease before plaintiffs made settlement. They therefore argue that plaintiffs did not rely upon any representations made to them, if any in fact were made, and move for summary judgment dismissing the complaint.
The factual dispute as to whether representations were made does not prevent a consideration of the motion on the merits. Defendants place plaintiffs in the best possible position by assuming, arguendo, that representations were made. They contend, nevertheless, that they still may not succeed as a matter of law. Thus, factual disputes are eliminated, permitting disposition of the motion on the basis of pure law, the basic requirement supporting the decision of a summary judgment motion. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
*617 Before addressing the principal issues, the question of standing must be considered. Several plaintiffs have sold their condominium units since this suit was commenced. Do they have standing to continue as parties? While it is clear that these plaintiffs no longer have an interest in setting aside the lease, their damage claims, covering payment of rents while they owned their units, are still maintainable. They are entitled to preserve their claims of fraud for that limited purpose.
Fraud is defined in Foont-Freedenfeld v. Electro-Protective Corp., 126 N.J. Super. 254 (App.Div. 1973), aff'd 64 N.J. 197 (1974), as follows:
Legal fraud or misrepresentation consists of a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity, with the intention that the other party rely thereon, and he does so rely to his damage. [at 257; citations omitted]
At the heart of the motion to dismiss is the question of reliance. Can plaintiffs sustain the burden of proving reliance when they received documents which, if read, would have disclosed the truth and, in addition, had constructive notice of that truth by reason of the recording of those documents?

A. Reliance; failure to read the contract documents.

Plaintiffs failed to read the contract documents.[1] As a general rule one who does not choose to read a contract before signing it cannot later relieve himself of its burdens. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960); Crescent Ring Co. v. Travelers Indemnity Co., 102 N.J.L. 85 (E. & A. 1926); Fivey v. Penna. R.R. Co., 67 N.J.L. 627 (E. & A. 1902); Martinez v. John Hancock Mut. Life Ins. Co., 145 N.J. Super. 301 (App.Div. 1976), cert. den. 74 N.J. 253 (1977). However, this rule does not apply when the execution of the contract has been induced by *618 fraud, even though the fraud may have been discovered by reading the document, Diamond Rubber Co., Inc. v. Feldstein, 112 N.J.L. 514 (E. & A. 1934), aff'd 11 N.J. Misc. 457, 166 A. 710 (Sup.Ct. 1933). Nor does it apply when one party has induced the other not to read the contract in full, Abel Holding Co. v. American Dist. Telegraph Co., 138 N.J. Super. 137, 157 (Law Div. 1975), aff'd 147 N.J. Super. 263 (App.Div. 1977). Furthermore, where one party to an oral agreement entrusts another with the obligation of reducing that agreement to writing he has a right to assume that it will be drawn in accordance with the oral understanding between them. When the contrary is true, failure to read the agreement is no defense. Peter W. Kero, Inc. v. Terminal Constr. Corp., 6 N.J. 361, 369 (1951).
On the basis of these rules it is clear that plaintiffs' failure to read the agreements of sale does not necessarily bar their claims of reliance. Misrepresentations may have caused their execution. It seems likely that they relied upon defendants to prepare accurate contracts. In some instances the condominium documents were not delivered to plaintiffs until the time of settlement. Due to the fact that they are complex and voluminous their late delivery raises questions as to whether it was part of an arrangement to hinder the receipt of information. The purchase agreements and the recreation lease deserve special scrutiny under present circumstances. The parties to the lease were one and the same. The owner was Regency Towers, a New Jersey corporation. It signed the lease as the landlord. The Regency Towers Condominium Association executed the lease as tenant. However, at the time of that execution the Association was controlled entirely by the developer-owner, since there were then no purchasers of condominium units who could join the Association. This circumstance, coupled with the loose language of the agreement, subjecting all of the condominium units to the provisions of the master deed and by-laws of the Association and permitting broad amendments at the option of the owner without mentioning the recreation lease, raises questions of concealment.
*619 Silence in the face of an obligation to speak may be fraud. In Jewish Center of Sussex County v. Whale, 165 N.J. Super. 84 (Ch.Div. 1978), aff'd 172 N.J. Super. 165 (App.Div. 1980), the court said:
The fact that no affirmative misrepresentation of a material fact has been made does not bar relief. The suppression of truth, the withholding of the truth when it should be disclosed, is equivalent to the expression of falsehood. The question under those circumstances is whether the failure to volunteer disclosure of certain facts amounts to fraudulent concealment, or, more specifically, whether the defendant is bound in conscience and duty to recognize that the facts so concealed are significant and material and are facts in respect to which he cannot innocently be silent. Where the circumstances warrant the conclusion that he is so bound and has such a duty, equity will provide relief. [at 89; citations omitted]
The philosophy underlying the doctrine of caveat emptor is long gone in New Jersey. In real estate transactions the rule is set forth in Tobin v. Paparone Constr. Co., 137 N.J. Super. 518 (Law Div. 1975). In that case the seller of a residential property was held liable for failing to disclose the fact that planned tennis courts would be constructed so near to the dwelling that they would constitute an annoyance. The court said:
Tobin properly relied on Paparone's representation as to the character of the surrounding neighborhood. Paparone's silence created a mistaken impression on the part of the purchaser which operated to induce the purchaser to buy. This silence was a fraudulent representation and a failure of an implicit condition of sale. [at 526]
See also Weintraub v. Krobatsch, 64 N.J. 445 (1974).
Did defendants have an obligation to disclose? From plaintiffs' position the facts indicate that this obligation may well have existed. Prospective purchasers, including plaintiffs, were given a brochure which showed the recreation area as a part of the building in which the condominium units were located. The physical layout of the condominium structure was such that a purchaser would naturally assume that it was a part of the common elements to which unit owners would have access. The agreement of sale did not indicate otherwise and greatly favored the seller. It contained printed language referring to the condominium documents which were recorded (in some instances, after the agreement was executed). It permitted *620 the seller to subject the purchaser's unit to liens, such as the recreation lease, notwithstanding the promise to convey marketable title.
The opportunity of condominium developers to take advantage of purchasers who have no control over the condominium association at the time they enter into agreements with the developer has come to the attention of the Legislature. It has adopted N.J.S.A. 46:8B-31 & 32, which establishes a rebuttable presumption of unconscionability with respect to recreational and other condominium leases executed under circumstances similar to the ones present here. The applicability of these statutes is not considered in disposing of the within motion.
It is apparent that the defense motion may not succeed on any theory of actual notice through delivery of the condominium documents. The fact that the documents were not read does not necessarily defeat plaintiffs' claim of reliance on misrepresentation. The question remains as to whether plaintiffs' claim of reliance must fail by reason of their constructive notice of the condominium documents resulting from recording.

B. Reliance; the recording of the contract documents.

N.J.S.A. 46:21-1 provides for the effect of recording:
Except as otherwise provided herein or in chapter 9 of Title 12A of the New Jersey Statutes, whenever any deed or instrument of the nature or description set forth in section 46:16-1 of this Title, which shall have been or shall be duly acknowledged or proved and certified, shall have been or shall be duly recorded or lodged for record with the county recording officer of the county in which the real estate or other property affected thereby is situate or located such record shall, from that time, be notice to all subsequent judgment creditors, purchasers and mortgagees of the execution of the deed or instrument so recorded and of the contents thereof.
Courts in New Jersey follow the rule that "[g]enerally speaking, and absent any unusual equity, a court should decide a question of title such as this in the way that will best support and maintain the integrity of the recording system." Palamarg Realty Co. v. Rehac, 80 N.J. 446, 453 (1979). Furthermore, in the normal situation an obligation is imposed upon a purchaser *621 of real property to make a reasonable and diligent search of title records which would disclose liens and claims affecting the property being purchased. Albizu v. Ace Enterprises Co., 163 N.J. Super. 42 (Ch.Div. 1978); Gutermuth v. Ropiecki, 159 N.J. Super. 139 (Ch.Div. 1977). Without more, plaintiffs here would be bound by the notice provided through the recording of the condominium documents; they could not claim reliance.
However, the alleged misrepresentations were made by defendants and their representatives. Why should buyers, who choose to rely upon representations of their sellers, be bound by contradictory statements of those same sellers, revealed only in recorded documents? Purchasers in the position of plaintiffs should be able to assume, not only that the agreement presented by their seller will reflect the verbal representations which induced them to sign the agreement, but also to assume that they will not be burdened with obligations contrary to these promises through constructive notice normally imposed upon purchasers by our recording statutes. The proper rule is set forth in Restatement, Torts 2d, § 540 (1977):
The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.
Comment:
....
b. The rule stated in this Section is applicable even though the fact that is fraudulently represented is required to be recorded and is in fact recorded. The recording acts are not intended as a protection for fraudulent liars. Their purpose is to afford a protection to persons who buy a recorded title against those who, having obtained a paper title, have failed to record it. The purpose of the statutes is fully accomplished without giving them a collateral effect that protects those who make fraudulent misrepresentations from liability.
Illustration:
1. A, seeking to sell land to B, tells B that the land is free from all incumbrances. By walking across the street to the office of the register of deeds in the courthouse, B could easily learn that there is a recorded and unsatisfied mortgage on the land. B does not do so and buys the land in reliance upon A's misrepresentation. His reliance is justifiable.
The question has not been addressed by the courts in New Jersey. However the Restatement rule has been supported in a *622 number of foreign jurisdictions In Bishop v. E.A. Strout Realty Agency, 182 F.2d 503 (4 Cir.1950), the court, dealing with false representations made by a real estate agent concerning the depth of water adjacent to the property being sold, said:
There is nothing in the law or in reason which requires one to deal as though dealing with a liar or a scoundrel, or that denies the protection of the law to the trustful who have been victimized by fraud. The principle underlying the caveat emptor rule was more highly regarded in the former times than it is today; but it was never any credit to the law to allow one who had defrauded another to defend on the ground that his own word should not have been believed. [at 505]
In Pryor v. Aviola, 301 A.2d 306 (Del. Super. Ct. 1973), it was held that: "A party guilty of concealment of a material fact is not relieved by the law of constructive notice." (at 309)
In Savings Bank Retirement System v. Clarke, supra, the court said:
It may be added that merely because the plaintiffs had access to the land records where the deed of trust of April 7, 1964, was recorded would not have prevented the plaintiffs from relying upon the alleged misrepresentation if they had seen fit to do this. [Citations omitted.] However, as we have observed, the plaintiffs did not see fit to do this. They employed their own expert title attorneys to review the land records to ascertain for them whether or not any liens did exist. Under these circumstances, the plaintiffs did not rely upon the alleged misrepresentation and the Amended Bill of Complaint showing this on its face stated no cause for equitable relief because of the alleged fraudulent representation. [258 Md. 501, 265 A.2d at 925]
In Barnes v. Lopez, 25 Ariz. App. 477, 544 P.2d 694 (1976), the court stated:
Appellants also contend that the requisite element of "right to rely" on the representation was lacking since Lopez could have, by proper inquiry, ascertained the correct zoning. Where, as here, a positive, distinct and definite representation as to the zoning status of the property was made, Lopez was entitled to rely on it and had no duty to make further inquiry. [Citations omitted.] This is true even though the facts could be ascertained by an inspection of public records. [25 Ariz. App. 477, 544 P.2d at 697; citations omitted]
One New Jersey case dealing with a financing application and not real estate, Nat'l Prem. Budget Plan Corp. v. Nat'l Fire Ins. Co., 97 N.J. Super. 149 (Law Div. 1967), aff'd 106 N.J. Super. 238 (App.Div. 1969), discusses the Restatement rule with approval. Also, in Trautwein v. Bozzo, 35 N.J. Super. 270 (Ch.Div. 1955), aff'd 39 N.J. Super. 267 (App.Div. 1956), the court said:

*623 Most jurisdictions hold to the broad general rule that one to whom a positive and definite representation concerning an existing fact has been made is entitled to rely upon it and need not make inquiry concerning the particular fact involved. [at 278; citations omitted]
The court's obligation to reach a just as opposed to a mechanical result is underlined in Weintraub v. Krobatsch, supra:
Our courts have come a long way since the days when the judicial emphasis was on formal rules and ancient precedents rather than on modern concepts of justice and fair dealing. While admittedly our law has progressed more slowly in the real property field than in other fields, there have been notable stirrings even there. See Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965); Reste Realty Corporation v. Cooper, 53 N.J. 444 (1969); cf. Marini v. Ireland, 56 N.J. 130 (1960); Totten v. Gruzen, et al., 52 N.J. 202 (1968). In Schipper we elevated the duties of the builder-vendor in the sale of its homes and in the course of our opinion we repeatedly stressed that our law should be based on current notions of what is "right and just." 44 N.J. at 90. [64 N.J. at 455]
This quotation was relied upon in Tobin v. Paparone Constr. Co., supra at 526, as "... helpful in giving direction to a trial court confronted with a novel claim advanced by an innocent purchaser against an experienced developer."
It therefore follows that the only remaining support for defendants' motion, that plaintiffs cannot claim reliance because the condominium documents were recorded, must fall and the entire motion be dismissed.
NOTES
[1] Some plaintiffs were represented by lawyers who failed to read the documents or who failed to advise their clients of the lease. It is doubtful that these plaintiffs can make any claim of reliance on the representations of defendants. They relied on their lawyers. Savings Bank Retirement System v. Clarke, 258 Md. 501, 265 A.2d 921 (Ct.App. 1970).