603 A.2d 1

KEVIN SONDERMAN, PLAINTIFF–APPELLANT, v. REMINGTON
CONSTRUCTION CO., INC., AND TOWNSHIP OF JACKSON,
DEFENDANTS–RESPONDENTS.

TOWNSHIP OF JACKSON, THIRD–PARTY PLAINTIFF, v.
JOSEPH F. MARTONE, THIRD–PARTY DEFENDANT.

Argued October 9, 1991—Decided March 2, 1992.

*Joseph S. Georgiana* argued the cause for appellant (*Capehart & Scatchard,* attorneys).

*Brian E. Rumpf* argued the cause for respondent Township of Jackson (*Hiering, Hoffman, Garvey and Gannon,* attorneys).

*Steven Pfeffer* argued the cause for respondent Remington Construction Co., Inc. (*Levin, Shea, Pfeffer & McMahon,* attorneys).

*Joseph M. Clayton, Jr.,* argued the cause for *amicus curiae,* New Jersey Land Title Association (*John R. Weigel,* attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The primary issue is whether a property owner who did not receive actual notice of an in rem tax foreclosure can defeat a quiet title action brought by a subsequent purchaser who did not know of the defective notice at the time of purchase from the municipality.

Before 1983 defendant Remington Construction Co., Inc. (Remington) was the record owner of the property in question. In 1983 defendant Township of Jackson (the Township) acquired title to the property through a tax foreclosure. Shortly thereafter, plaintiff, Kevin Sonderman, purchased the property at public auction. Before the closing, however, Remington obtained an order vacating the tax foreclosure judgment because it had not received notice of the foreclosure action. Remington filed the order in litigation files with the Clerk of the Superior Court and with the Clerk of Ocean County, but did not record it in the County deed book. Notwithstanding the vacation of the foreclosure judgment, the Township delivered a deed to Sonderman, which he promptly recorded.

Thereafter Sonderman brought the present action to quiet title, arguing that as a subsequent bona fide purchaser without notice, he had better title than Remington, which had failed to record its vacation order in the County deed book. He also argued that the order was void because he was an indispensable party and had not been notified of the proceeding. Relying on the order vacating the foreclosure judgment, the Chancery Division ruled that the Township had no title to convey to Sonderman. The Appellate Division affirmed. 244 *N.J.Super.* 611, 583 *A.*2d 367 (1990). We granted certification, 126 *N.J.* 323, 598 *A.*2d 883 (1991), and now affirm.

–I–

Before June 23, 1983, Remington owned approximately fourteen acres in Jackson Township, identified on the tax map as Lot 15, Block 138–2. Due to an "oversight," Remington failed

to pay taxes on five properties, including Lot 15. Consequently, the Township commenced an in rem tax foreclosure action. On June 29, 1983, it obtained a final judgment terminating Remington's right of redemption and declaring that ownership of all the lots was vested in the Township. The Township thereupon recorded the judgment in the county deed book on July 19, 1983. See *N.J.S.A.* 54:5–104.65.

On November 21, 1983, Sonderman successfully bid $13,600 for Lot 15 at a foreclosure sale. The sale was held pursuant to an ordinance that provided in relevant part:

In the event that the Title of the Township of Jackson to any parcel or portion thereof is not marketable or insurable at regular rates by a reputable title insurance company licensed to do business in the State of New Jersey, or in the event of any other defects, a successful bidder's sole remedy shall be the right to demand the return of any deposit paid to the Township of Jackson.

The closing was delayed because of a cloud on the title of all properties owned by Jackson Township arising from a $13.3 million judgment. *Ayers v. Township of Jackson*, 106 *N.J.* 557, 525 *A.*2d 287 (1987). After the removal of the cloud, on November 19, 1984, the Township delivered to Sonderman a bargain and sale deed, which he recorded on January 14, 1985.

Meanwhile Remington learned of the foreclosure action from survey stakes on its property. On February 29, 1984, Remington applied to the Chancery Division to vacate the tax foreclosure judgment, claiming that the Township had not notified it of the foreclosure proceeding. Remington moved pursuant to *Rule* 4:50, which provides:

–1. Grounds of Motion

On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the

judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

-2. Time of Motion

The motion shall be made within a reasonable time, and for reasons (a), (b) and (c) of R. 4:50-1 not more than one year after the judgment, order or proceeding was entered or taken.

-3. Effect of Motion

A motion under R. 4:50 does not suspend the operation of any judgment, order or proceeding or affect the finality of a final judgment, nor does this rule limit the power of a court to set aside a judgment, order or proceeding for fraud upon the court or to entertain an independent action to relieve a party from a judgment, order or proceeding.

In particular, Remington relied on (1) mistake, inadvertence, surprise, or excusable neglect; (2) the judgment or order was void; and (3) any other reason justifying relief from the operation of the judgment or order. *R.* 4:50-1.

On April 9, 1984, the Chancery Division entered an order vacating a portion of the tax foreclosure judgment and vesting title in Remington. As a condition of the judgment, the court directed Remington to pay $23,000 in back taxes, which Remington has since paid. Remington's attorney filed the order with the Clerk of the Superior Court in Trenton and with the Ocean County Clerk, both of whom placed it in the litigation files for the foreclosure action. Thus, before the Township delivered its deed to Sonderman, Remington had vacated the judgment purporting to vest title in the Township, a fact that was not known to Sonderman.

The Township's defective notification of Remington may be traced to the fact that the Township foreclosed against the lots in two parcels. Regarding one parcel that is not the subject of this action, the tax assessment records listed an address for Remington in Shrewsbury. The receptionist in the building where Remington's office was located signed the certified mail receipt for the notice of the tax foreclosure proceedings. She, however, was not an agent for or employed by Remington. Hence, she does not qualify as an agent for the service of process, *R.* 4:4-4(c)(1), and service on her did not constitute service on Remington. Concerning the second parcel, which

included Lot 15, Remington's address in the tax records was listed as 55 Brick Boulevard, Bricktown. The offices of Remington's registered agent, Ronald Gasorowski, an attorney, were not at that address, but at 556 Brick Boulevard. Remington never received any notice at either address. Neither the county nor its attorney could produce a certified mail receipt or any proof of proper service concerning Lot 15. In sum, the Township never made valid service on Remington for the foreclosure of the property in question.

The Chancery Division declined Sonderman's request to quiet title, reasoning that the tax foreclosure judgment "if not void [ab initio], for lack of proper service, was certainly voidable and, in fact, was voided by [the Chancery Division] and properly so." The court reasoned that even if Sonderman was a bona fide purchaser for value, the Township could not convey to him better title than it had. Because Sonderman had not acquired any title from the Township, the court rejected Sonderman's contention that he was entitled to the protection of the Recording Act, *N.J.S.A.* 46:16-1 to -14, and that he was an indispensable party to the motion to vacate the tax foreclosure judgment.

The Appellate Division affirmed, holding that Remington had "duly recorded" the order vacating the tax foreclosure judgment in compliance with *N.J.S.A.* 46:16-1.1. It found that by recording the order in the litigation files maintained by the County Clerk and the Clerk of the Superior Court, Remington had complied with the recording requirements. 244 *N.J.Super.* at 617, 583 *A.*2d 367.

The Appellate Division also rejected Sonderman's claim that he was an indispensable party to Remington's motion to vacate the foreclosure judgment. It reasoned that Remington's April 1984 order had deprived Sonderman of his interest in the property. The court implicitly agreed with the trial court's finding that the tax foreclosure judgment was void, stating that the Township had never acquired title to the property and that the Township "could not convey to Sonderman any more inter-

est in Lot 15 than the Township had * * *. By November 1984, the Township had no further interest in Lot 15." *Id.* at 618, 583 *A.*2d 367. Thus, both lower courts recognized that the tax foreclosure judgment was void as against the property in question.

-II-

For the past fifteen years, notification of property owners in foreclosure actions has been a topic of continuing concern to the United States Supreme Court and to this Court. In rem tax foreclosures in particular generate a unique tension between the need of municipalities to return non-productive properties to the tax rolls and the rights of owners to notice of foreclosure proceedings affecting their property. In *Township of Montville v. Block 69, Lot 10,* this Court held that under both state and federal due process guarantees, when an owner's name and address appear on a municipality's tax rolls, the municipality must notify the owner by mail before foreclosing the owner's right to redeem. 74 *N.J.* 1, 10, 376 *A.*2d 909 (1977) (citing *Mullane v. Central Hanover Bank and Trust Co.,* 339 *U.S.* 306, 70 *S.Ct.* 652, 94 *L.Ed.* 865 (1950)).

Thereafter, we amended *Rule* 4:64–7, which implements the In Rem Tax Foreclosure Act, *N.J.S.A.* 54:5–104.29 to –104.75. As amended, *Rule* 4:64–7(c) requires service in an in rem tax foreclosure:

> The plaintiff shall, within 7 days after the date of publication of the notice of foreclosure, serve a copy thereof in the manner hereinafter provided on each person whose name appears as an owner in the tax foreclosure list at his or her last known address as it appears on the last municipal tax duplicate. The plaintiff shall also make such service upon all other persons having an ownership or lien interest recorded in the office of the Superior Court Clerk or the county recording officer on the date of the filing of the complaint and upon all other persons who, pursuant to N.J.S.A. 54:5–104.48, as amended, have filed a notice with the tax collector specifying a title, lien, claim or interest in any of the lands sought to be affected by said complaint. Such service shall be made in the manner provided by R. 4:4–4(a) [individual service] or by simultaneously mailing to the last known address by registered or certified mail, return receipt requested, and by ordinary mail. In addition to the foregoing, the plaintiff

shall mail a copy of the notice of foreclosure, by ordinary mail to the Attorney General.

Six years later, in *Mennonite Board of Missions v. Adams*, the United States Supreme Court held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." 462 *U.S.* 791, 800, 103 *S.Ct.* 2706, 2712, 77 *L.Ed.*2d 180, 188 (1983).

Following *Mennonite*'s lead, New Jersey courts have found a duty to notify in numerous situations. In *Township of Berkeley v. Berkeley Shore Water Co.*, 213 *N.J.Super.* 524, 517 *A.*2d 1199 (App.Div.1986), the property owner had not received a copy of the summons and complaint in a tax foreclosure action, and the certified mail receipt was returned, undelivered, to the municipality. The trial court concluded that the property owner "had taken reasonable steps to notify the township of its change of address, and that thereafter it was the obligation of the township to see that the tax bills and notices were sent to the correct address." *Id.* at 529, 517 *A.*2d 1199. The Appellate Division agreed and held that "the notice requirements of the In Rem Tax Foreclosure Act must comply with due process, and that notice is constitutionally deficient where it is not directed to known persons in interest in the property to be foreclosed." *Id.* at 531–32, 517 *A.*2d 1199. The court placed this burden on the municipality because the principal purpose of the law was "to provide a method for collection of taxes, rather than being a primary tool to divest taxpayers of their property." *Id.* at 532, 517 *A.*2d 1199. Two other opinions support the duty of a municipality to provide proper notice. *See Township of Jefferson v. Block 447A, Lot 10*, 228 *N.J.Super.* 1, 8–9, 548 *A.*2d 521 (App.Div.1988) (due process required municipality to mail notice of in rem foreclosure action to purchaser at prior tax sale at address in municipality's records even if purchaser had not requested notice in accordance with statute); *Town of Phillips-*

*burg v. Block 22 Lots 14, 15, 16,* 218 *N.J.Super.* 558, 564, 528 *A.*2d 98 (App.Div.1987) (to insure mortgagee has notice of tax sale, municipality should conduct title search before instituting foreclosure action).

More recently, we extended the duty of notification to judgment creditors in a mortgage foreclosure action. See *New Brunswick Sav. Bank v. Markouski,* 123 *N.J.* 402, 424, 587 *A.*2d 1265 (1991). We held both that a judgment lien is a property interest subject to the protection of due process and that a levying creditor must provide actual notice of an execution sale to other judgment creditors whose names and addresses are reasonably ascertainable. Holding that constructive notice alone would not suffice, we wrote:

> In determining whether the names and addresses of adversely affected parties are, indeed, "reasonably ascertainable," we focus on several factors including an evaluation of the public recording system, if one exists, for the property interest in question; the likelihood that the plaintiff in the proceeding has actual knowledge or reasonable access to the names and addresses of the affected parties; and the relative ease or difficulty with which the plaintiff may find those addresses not on the public record. [*Id.* at 419–20, 587 *A.*2d 1265 (citation omitted).]

The "appropriate remedy * * * is to void that part of the judgment below that cuts off the unnoticed creditor * * *." *Id.* at 427, 587 *A.*2d 1265. Although the appropriate relief will depend on the circumstances, "[t]he general rule is that when insufficient notice of a sheriff's sale is given, the preferred remedy is that which restores the *status quo ante* to the greatest extent possible." *Id.* at 425, 587 *A.*2d 1265.

Despite this clear requirement of actual notice for property owners, courts sometimes have denied relief to unnotified owners. In *Last v. Audubon Park Associates,* 227 *N.J.Super.* 602, 548 *A.*2d 236 (App.Div.1988), the owner of a mortgage had received constructive notice through publication and posting, but not actual notice of the in rem foreclosure proceedings. The court found to be untimely the mortgagee's challenge four years after the entry of the foreclosure judgment. A subsequent purchaser of the property had relied substantially on the

foreclosure judgment and had invested approximately $9 million in a low-income rental housing project. Characterizing plaintiff's delay in asserting his rights as calculated, the court concluded that the mortgagee had not acted within a reasonable time and that he was guilty of laches.

The Appellate Division reached a similar result in *City of Newark v. (497) Block 1854*, 244 *N.J.Super.* 402, 582 *A.*2d 1006 (1990). In that case, Chiquita Realty purchased property with existing tax liens. Two years later, when Chiquita learned of the sale of the property for unpaid taxes, instead of redeeming the property, it successfully bid at the foreclosure sale. Unfortunately, Chiquita did not have sufficient funds to pay the purchase price, so the City again offered the property for sale in 1988. This time another bidder outbid Chiquita and then spent several thousand dollars to develop the property. Assuming, as had the trial court, that Chiquita had not received notice of the first sale, the Appellate Division wrote:

> If [Chiquita] had applied for relief with reasonable promptness after learning that Newark was offering its properties for sale, or if it had at least applied before the rights of a contract purchaser had intervened, it surely would have been entitled to have the judgment vacated and to redeem its properties. Its right to redeem would have been subject to no greater burden than if it had acted promptly after receipt of proper notice of the commencement of the foreclosure suit. [*Id.* at 407, 582 *A.*2d 1006 (citations omitted).]

After learning that the property was to be resold, however, Chiquita waited three years before filing its motion to vacate the tax foreclosure judgment. The Appellate Division found furthermore that by bidding on the property, Chiquita, in effect, had validated the original judgment that had vested title in Newark. Furthermore, both the City and the successful bidder had expended considerable time and money in reliance on the validity of the foreclosure judgment. Consequently, the court found that Chiquita was estopped from challenging the lack of notice in the foreclosure proceeding. The court concluded that the owner's right to due process did not justify invalidating the foreclosure proceedings. In reaching that conclusion, the court recognized that an owner's due process rights

must be weighed against the need of municipalities to collect taxes. *Id.* at 408, 582 *A.*2d 1006. The proper balance will often depend on the facts of each case. *Ibid.* n. 1.

–III–

The In Rem Tax Foreclosure Act requires notice "as provided by the Rules Governing the Courts of the State of New Jersey," *N.J.S.A.* 54:5–104.42, to owners when a municipality forecloses their property for non-payment of taxes. One permissible method of service is notice by mail to the "last known address as it appears on the last municipal tax duplicate." *R.* 4:64–7(c). The problem in this case is that Remington's address on Jackson Township's tax records was incorrectly listed as 55 Brick Boulevard. Furthermore, no notice was sent to Remington's agent at the correct address, 556 Brick Boulevard. Nothing in the records of the Township or the Township attorney indicates that notice was mailed to either address. In brief, the notice was defective.

■ An owner's right to attack a judgment because of defective notice is constrained by both procedural requirements of timeliness and by equitable principles of laches and estoppel. Underlying those constraints is the recognition that even owners who have been deprived of a property interest without notice can by their delay and the reasonable reliance of others lose the right to attack a judgment.

■ In this case, however, we conclude that the property owner acted in a timely fashion. On learning of the defective notice, Remington promptly moved to vacate the tax foreclosure. Its motion to vacate, filed eight months after the entry of the judgment, was within a "reasonable time" and "not more than one year after the judgment" was entered. *R.* 4:50–2. To affirm, we need not define the outer limits of an owner's right to set aside a judgment for lack of notice. We are satisfied that the judgment was void and that Remington's motion for relief was timely.

–IV–

We now turn to Sonderman's argument that because Remington failed to record the vacation order as a deed, the order is void against Sonderman and cannot defeat his claim as a subsequent bona fide purchaser. The argument implicates two statutes. Remington points to *N.J.S.A.* 46:16–1.1, which provides that "[c]ertified copies of final decrees of the former Court of Chancery, final judgments of record of this State * * * may be recorded as deeds of conveyance in the office of the county recording officer of the county wherein the real estate is situate * * *." Its point is that the statute permits, but does not require, the recording of either the foreclosure judgment or the order he obtained vacating that judgment.

Sonderman, however, relies on *N.J.S.A.* 46:22–1, which prescribes the effect of the failure to record deeds or other instruments. The statute states in relevant part that

> [e]very deed or instrument of the nature or description set forth in section 46:16–1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against * * * all subsequent bona fide purchasers * * * whose deed shall have been first duly recorded * * *.

Sonderman argues that the order vacating the tax foreclosure judgment, like the judgment itself, should have been recorded in the county deed book and that because it was not so recorded, the order is "void and of no effect" against him. For different reasons, both lower courts rejected that argument.

The Chancery Division ruled that "the Recording Act, per se, is not involved," implicitly ruling that the order need not have been recorded in the deed book. By comparison, the Appellate Division acknowledged the applicability of the Recording Act, stating that

> [u]nder *N.J.S.A.* 46:22–1, deeds and instruments of the nature set forth in *N.J.S.A.* 46:16–1 are void against subsequent recording bona fide purchasers for value without notice, unless first duly recorded *or* lodged for record in the county recording office.
>
> However, the book of deeds is not the only record source involved in a diligent search for duly recorded judgments. There is an obligation imposed upon a purchaser to reasonably and diligently "search ... all dockets and

records with regard to existence of liens and claims on and to real estate."
*Gutermuth v. Ropiecki*, 159 *N.J.Super.* 139, 148, [387 *A.2d* 385] (Ch. Div.1977).

\* \* \* \* \* \* \* \*

Although a judgment may be recorded as a deed, failure to do so is not fatal if the judgment has been properly recorded, as here, by both the County Clerk and the Clerk of the Superior Court. [244 *N.J.Super.* at 615–17, 583 *A.2d* at 369.]

Thus, the Appellate Division found that Remington had satisfied the requirements for recording even though it had not recorded the vacation order in the deed book. Although we reach the same result as the lower courts, we do so by a different path.

We take our lead from the pronouncement that "[g]enerally speaking, *and absent any unusual equity*, a court should decide a question of title such as this in the way that will best support and maintain the integrity of the recording system." *Palamarg Realty Co. v. Rehac*, 80 *N.J.* 446, 453, 404 *A.2d* 21 (1979) (emphasis added). As important as is the confidence of title searchers, purchasers, and others who rely on recorded instruments, the integrity of record title in rare cases can bend to accommodate compelling equities. *See Weintraub v. Krobatsch*, 64 *N.J.* 445, 456, 317 *A.2d* 68 (1974) ("Our courts have come a long way since the days when the judicial emphasis was on formal rules and ancient precedents rather than on modern concepts of justice and fair dealing. While admittedly our law has progressed more slowly in the real property field than in other fields, there have been notable stirrings even there."); *Hyland v. Kirkman*, 204 *N.J.Super.* 345, 370, 498 *A.2d* 1278 (Ch.Div.1985) (setting aside judgments, conveyances, and tax sale certificates allegedly integral to fraudulent scheme challenged twenty years after entry of judgments); *Berman v. Gurwicz*, 178 *N.J.Super.* 611, 621, 429 *A.2d* 1084 (Ch.Div.1981) (reliance on recorded documents not allowed when fraud involved).

The Township frankly acknowledges its errors in foreclosing on the property without notice to Remington and in

proceeding to close with Sonderman after learning of the defective notice. On learning of the foreclosure judgment, Remington promptly sought and obtained an order to vacate. Apparently misled by the permissive language of *N.J.S.A.* 46:16–1.1, Remington's attorney filed the vacation order not in the county deed book, but with the county clerk and the Clerk of the Superior Court. Sonderman, who was aware that the Township had acquired title through an in rem tax foreclosure, was on notice of the ordinance limiting his remedy in the event of a title defect "to demand the return of any deposit paid to the Township of Jackson" in the event of a title defect. In sum, the case presents an exceptional set of facts arising out of a defective in rem tax foreclosure in which the municipality did not notify the owner of the proceedings; the owner, on learning of the proceedings, promptly moved to vacate the foreclosure judgment; the owner's attorney, misled by the literal terms of *N.J.S.A.* 46:16–1.1, filed the vacation order in the wrong place; the subsequent purchaser's sole remedy in the event of defects in title was the municipality's return of any deposit; and the parties can be returned to their prior positions. *See Markouski, supra,* 123 *N.J.* at 425, 587 *A.*2d 1265 (preferred remedy is to restore parties to original position). Like the lower courts, we believe that the equitable result is to deny Sonderman's request to quiet title. We also believe that we can achieve this result without violating the integrity of the recording system or the need for a liberal construction of the Tax Sale Law. See *N.J.S.A.* 54:5–3. The primary purpose of the Law is not to divest owners of their property, but to provide a method for collecting taxes. *Township of Berkeley, supra,* 213 *N.J.Super.* at 552, 517 *A.*2d 1199.

For the future, however, we affirm our commitment to the proposition that "a purchaser should be charged only with such notice from the records as can be ascertained by a reasonable search of those records * * *." Donald B. Jones, "The New Jersey Recording Act—A Study of Its Policy," 12 *Rutgers L.Rev.* 328, 335 (1957). Accordingly, we address a

portion of the Appellate Division opinion, stating that a pur-
chaser is obliged to search not only the book of deeds for
foreclosure judgments, but also all dockets and records for
liens on real estate. 244 *N.J.Super.* at 616, 583 *A.*2d 367.

That statement is at odds with current searching practice.
According to the testimony of John D. Eler, Sonderman's title
expert, and *amicus,* the New Jersey Land Title Association, the
standard practice among title searchers is to search for fore-
closure judgments and orders vacating such judgments in the
county deed book. We perceive no reason to impose a greater
responsibility on title searchers than is imposed by standard
practice. *See Howard Sav. Bank v. Brunson,* 244 *N.J.Super.*
571, 576, 582 *A.*2d 1305 (Ch.Div.1990) (emphasizing that " 'title
searching, upon which so much of our conveyancing practice
rests, has been created in very large part without the aid of
legislation,' and that an investigation of the custom and practice
of title searching is essential to determine current disputes in
that area of law." (quoting *Palamarg Realty, supra,* 80 *N.J.*
at 461, 404 *A.*2d 21)); Jones, *supra,* 12 *Rutgers L.Rev.* at 329
("[T]he various New Jersey legislatures which have dealt with
the Recording Act have spelled out a broad policy and have left
it to the searchers, conveyancers, and courts to construct a
system of title searching within the bounds delineated by that
policy, and to maintain that system in a good and workable
order."). Henceforth, both an in rem foreclosure judgment and
an order vacating that judgment must be recorded in the same
manner as a deed.

Consistent with our opinion, the concurrence begins with the
premise that the in rem judgment was void and that the
Township did not acquire title under it. *Post* at 112, 603 *A.*2d
at 9. The defect in the concurrence is that it ignores both
Remington's duty to record the vacation order in the county
deed book and Sonderman's correlative right to rely on record
title in purchasing the property from the Township. *See*
*N.J.S.A.* 46:22–1. It also ignores the legislative mandate that
deeds or comparable instruments such as tax foreclosure judg-

ments and orders vacating such judgments are void unless properly recorded. Honoring that mandate implicates proper respect for both the Legislature and the integrity of the recording system.

No dispute exists among the parties that Remington had a duty to record the vacation order and that the cost of discharging that duty is minimal. Through its ability to record the vacation order, Remington controlled the risk that a subsequent bona fide purchaser would rely on the records indicating that the Township had acquired title to its property through the tax foreclosure judgment. Had Remington properly recorded the vacation order, Sonderman would have discovered it in the normal course of searching the title. Remington's failure to record the order misled Sonderman to his detriment in closing on the property. *See* 46 *Am.Jur.2d Judgments* § 752 (1969) ("There may be some instances, however, under which laches or delay may be asserted to preclude relief, as where others innocently relied on the record of the judgment."). None of the cases or other authorities cited by the concurrence poses the specific situation in this case, that of a subsequent purchaser who was misled to his detriment by the failure of an owner to record properly an order vacating a tax foreclosure judgment that deprived the owner of title to its property.

On the facts of this case, it is not enough to say, as the concurrence says, that the foreclosure judgment is void. *Post* at 112, 603 *A.*2d at 9. We must also account for Remington's failure to record the vacation order. Our reason is not, as the concurrence suggests, that "a purchaser's good faith, by itself, can impart legality to a void foreclosure judgment." *Post* at 113, 603 *A.*2d at 10. The reason is that *N.J.S.A.* 46:22–1 invalidates an improperly-recorded instrument affecting title, such as the vacation order. Thus, the critical issue is not whether Remington is entitled to an order vacating the tax foreclosure judgment; the issue is whether, after having obtained such an order, Remington may, in light of its failure to record the order, prevail over a subsequent bona fide purchas-

er. Our resolution is closely tailored to the facts of the case. On these facts, we find that Remington should have recorded the vacation order in the county deed book, but that the balance of equities tips in favor of finding that it is entitled to the return of its property. Hence, we do not reach the point that the concurrence finds dispositive: an owner who is divested of property because of a void tax foreclosure judgment will in the absence of countervailing equities prevail over a subsequent bona fide purchaser. *Post* at 112, 603 *A.*2d at 9. One problem with such a holding is that it tends to undermine the duty to record instruments affecting title. To that extent, the concurrence subverts the integrity of record title and the stability of the recording system.

The judgment of the Appellate Division is affirmed.

STEIN, J., concurring.

I write separately because the Court's conclusion in Part IV is not essential to the disposition of this case. In my view, the municipality's failure to give notice to Remington of the *in rem* tax-foreclosure judgment, combined with Remington's timely and successful effort to vacate the judgment, precludes the municipality from passing any interest to Sonderman.

Although the majority rightly concludes that the municipality's foreclosure judgment was void for lack of proper service, it nevertheless treats that void judgment as though a bona fide purchaser could potentially acquire title under it. With the majority's decision, the voidness of a tax-foreclosure judgment will not defeat a subsequent purchaser's title if the order vacating the judgment is not properly recorded pursuant to *N.J.S.A.* 46:22–1. To support its conclusion that the issue of voidness is not dispositive, the majority cites two cases in which courts refused to set aside void foreclosure judgments because the owners were found guilty of laches and the subsequent purchasers had expended time and funds to improve the proper-

ty. *Ante* at 104–05, 603 *A.*2d at 5. *See City of Newark v. (497) Block 1854,* 244 *N.J.Super.* 402, 582 *A.*2d 1006 (App.Div.1990) (realty company delayed three years before filing motion to vacate tax-foreclosure judgment); *Last v. Audubon Park Assocs.,* 227 *N.J.Super.* 602, 548 *A.*2d 236 (App.Div.1988) (court found that mortgagee deliberately waited eighteen months before challenging three-year-old tax-foreclosure judgment), *certif. denied,* 114 *N.J.* 491, 555 *A.*2d 613 (1989). Those cases are unpersuasive because Remington moved to set aside this foreclosure judgment in a timely fashion, as the majority indeed acknowledges. *Ante* at 106, 603 *A.*2d at 6.

Despite the absence of equitable concerns in this case, the majority implies that a purchaser's good faith, by itself, can impart legality to a void foreclosure judgment. Prevailing authority is to the contrary: "If the execution is void, and not merely voidable, the resultant sale is absolutely void and the purchaser, regardless of good faith, acquires no title." *Raniere v. I & M Invs., Inc.,* 159 *N.J.Super.* 329, 336–37, 387 *A.*2d 1254 (Ch.Div.1978), *aff'd,* 172 *N.J.Super.* 206, 411 *A.*2d 719 (App.Div.), *certif. denied,* 84 *N.J.* 473, 420 *A.*2d 1298 (1980); *see also Merewood, Inc. v. Denshaw,* 139 *N.J.Eq.* 182, 50 *A.*2d 459 (Ch.1947) (bona fide purchaser did not receive title where municipality-grantor's only claim to title was unconstitutional tax foreclosure), *appeal denied,* 142 *N.J.Eq.* 138, 59 *A.*2d 589 (Ch.1948); *Sprang v. Petersen Lumber, Inc.,* 165 *Ariz.* 257, 798 *P.*2d 395, 400 (Ct.App.1990) ("When a judgment is void, the execution of the judgment is void, and title to land does not pass"); *Noble v. Kahn,* 206 *Okl.* 13, 240 *P.*2d 757, 759 (1952) ("The doctrine of the bona fide purchaser without notice does not apply where there is a total absence of title in the vendor"); 30 *Am.Jur.*2d, *Executions* § 441 (1967) ("[T]he title of the purchaser is not protected from the effects of a reversal of the judgment, where the judgment is declared void, since, if the judgment is a nullity, all proceedings based thereon, including the execution and a sale thereunder, are likewise void and of no effect.").

From the outset, our courts have sustained void judgments only where the equitable doctrines of estoppel and reliance strongly compel such an anomalous result. In *Garza v. Paone*, 44 *N.J.Super.* 553, 131 *A.*2d 32 (1957), the Appellate Division first announced that void judgments would not be vacated where laches and estoppel sustain the judgment. Although the court denied the motion to set aside a default judgment as untimely, it nevertheless stated that the judgment remained "absolutely void and of no legal effect for any purpose." *Id.* at 557, 131 *A.*2d 32. As Judge Freund noted in his dissent, that new rule created a legal paradox: a void judgment that could neither be set aside nor enforced. *Id.* at 561–62, 131 *A.*2d 32. Recently, the Appellate Division, recognizing that paradox, argued that default judgments void for constitutionally defective service "must ordinarily be set aside" absent laches or detrimental reliance. *Berger v. Paterson Veterans Taxi*, 244 *N.J.Super.* 200, 205, 581 *A.*2d 1344 (1990). In an analogous case, the Third Circuit held that statutes of limitations "are ineffective to preclude a claim of voidness based on 'jurisdictional' defects in a tax foreclosure proceeding." *Benoit v. Panthaky*, 780 *F.*2d 336, 338–39 (3rd Cir.1985); *see Register v. Kenai Peninsula Borough*, 667 *P.*2d 1236, 1238 (Alaska 1983) (citing eight cases); *Bogart v. Lathrop*, 90 *Nev.* 230, 523 *P.*2d 838, 840 (1974); *see also Ford v. Willits*, 237 *Kan.* 13, 697 *P.*2d 834 (1985) (although laches "should ordinarily not be a defense to a motion to open a judgment that is utterly void, there may be unusual circumstances * * * where it would be inequitable not to apply the doctrine"). Thus, most courts sparingly invoke equitable principles to deny motions to set aside void judgments.

In the instant case, the majority transmutes the exceptional instance, when void foreclosure judgments will not be set aside, into the general rule, by holding that the failure to record an order vacating a void judgment in the county deed book will usually suffice to vest title in any subsequent bona fide purchaser. However, *N.J.S.A.* 46:22–1 was hardly designed to

make void judgments enforceable. As one treatise argues, recording statutes do not generally cure defects in title:

> A recorded deed, for example, may be a forgery, procured by fraud in the execution, executed by a minor, or never delivered. Any one of these defects will make the deed void, and the fact that it is recorded in no sense enhances its validity.
>
> [Roger A. Cunningham, William B. Stoebuck, & Dale A. Whitman, *The Law of Property*, § 11.9 at 782 (1984).]

Allowing the recording of title to cure a void foreclosure judgment runs contrary to the principal purpose of New Jersey's In Rem Tax Foreclosure Act, which is "to provide a method for collection of taxes, rather than being a primary tool to divest taxpayers of their property." *Township of Berkeley v. Berkeley Shore Water Co.*, 213 *N.J.Super.* 524, 532, 517 *A.*2d 1199 (App.Div.1986).

In all other respects, I join the Court's opinion.

O'HERN, J., joins in this opinion.

O'HERN and STEIN, JJ., concurring in the result.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal* —None.