244 N.J. Super. 571 (1990)
582 A.2d 1305
THE HOWARD SAVINGS BANK, PLAINTIFF,
v.
BURL BRUNSON, "MRS. BURL BRUNSON", CHRYSLER FIRST FINANCIAL SERVICES CORPORATION, ROLS CAPITAL CO., CHICAGO TITLE INSURANCE COMPANY, JESUS IJALBA AND CELESTE IJALBA, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Essex County.
Decided March 7, 1990.
*572 Steven H. Finkelstein for plaintiff (Hayt, Hayt & Landau, attorneys).
Lewis M. Markowitz for defendants (Epstein, Epstein, Brown & Bosek, attorneys).
MARGOLIS, J.S.C.
This matter involves cross motions for summary judgment on a priority dispute between mortgage holders. The essential facts are undisputed.
In January 1986, defendant Burl Brunson (Brunson) purchased a parcel of property in Newark, New Jersey. The deed for the property was properly recorded pursuant to N.J.S.A. 46:21-1 and indexed pursuant to N.J.S.A. 46:20-4 on January 24, 1986. In March 1986, Brunson borrowed $50,000 from plaintiff Howard Savings Bank (Howard) secured by a mortgage which was properly recorded on May 1, 1986. This mortgage was not properly indexed until February 3, 1988.
Brunson subsequently executed two mortgages to defendant Rols Capital Company (Rols) on April 11, 1986 and on May 14, 1986. On May 20, 1986, Brunson executed and delivered a mortgage on the property to Myron Pokross (Pokross). On the same day, Brunson executed and delivered a deed for the *573 property to Pokross which was recorded in the office of the register of Essex County on July 7, 1988.
On October 6, 1987, Brunson executed and delivered a deed for the property to defendants Jesus Ijalba and Celeste Ijalba (Ijalba), which deed was properly recorded in the office of the register of Essex County on November 4, 1987. On October 6, 1987, Ijalba executed and delivered a mortgage covering the subject premises to defendant Chrysler First Financial Services Corporation (Chrysler). This mortgage was also properly recorded on November 4, 1987.
On the basis of a thorough title search and an affidavit of title executed by Brunson on October 5, 1987, representing that he had not allowed any legal interest to be created which would affect the ownership or use of the property, defendant Chicago Title Insurance Company (Chicago Title) issued a title insurance policy to Chrysler.
On May 19, 1988, Howard brought a foreclosure action against Chrysler and Ijalba, claiming that the proceeds of Brunson's sale of the premises to Ijalba were not applied to the mortgage held by Howard, and that its mortgage had priority over all subsequent encumbrancers of the property. The disposition of the claims, if any, arising from the interests of Rols and Pokross in the property are not before this court; therefore, this opinion is limited to a ruling on the priority between Howard and defendants Chrysler and Ijalba.
The central issue before the court is whether Howard's prior interest in the property, which was recorded but misindexed, has priority over the interests of Ijalba and Chrysler, subsequent lienors who failed to discover Howard's interest due to the misindexing.
Our inquiry begins with the New Jersey Recording Act. N.J.S.A. 46:21-1 provides:
Except as otherwise provided herein, whenever any deed or instrument of the nature or description set forth in section 46:16-1 of this title, which shall have been or shall be duly acknowledged or proved and certified, shall have been or *574 shall be duly recorded or lodged for record with the county recording officer of the county in which the real estate or other property affected thereby is situate or located such record shall, from that time, be notice to all subsequent judgment creditors, purchasers and mortgagees of the execution of the deed or instrument so recorded and of the contents thereof.
Howard contends that, because its mortgage from Brunson was properly recorded pursuant to the Recording Act, its interest has priority over all subsequent encumbrancers. Plaintiff further argues that valid recordation of a mortgage alone serves as constructive notice to interested parties; thus, defendants had constructive notice of Howard's interest because the mortgage was properly recorded over 17 months before defendants obtained an interest in the property.
N.J.S.A. 46:20-1 and -4 provide in pertinent part:
The county recording officer of each county shall provide, at the expense of their respective counties, a book or books, and shall, in case it is not already done, make and therein enter indexes, in alphabetical order, to all the various books of record, called and backed "deeds" and called and backed "mortgages," heretofore or hereafter recorded in their respective offices, distinguishing the book in which each deed or mortgage is recorded.
The indexes herein required to be kept shall contain the names of the several grantors and grantees of deeds, and the names of the several mortgagors of mortgages.
....
The county recording officer of each county shall keep, in addition to the daily entries of the same, an alphabetical index of all the names of the grantors in deeds, parties to instruments and mortgagors in mortgages that may be presented to him for record, which alphabetical index shall be made of all such deeds and instruments by the county recording officer on the same day, or on the day following, that they are received for record.
Plaintiff discounts the significance of N.J.S.A. 46:20-1, the indexing statute, arguing that although it imposes a duty on the county register to maintain an alphabetized index of the chronological record, it places no duty upon the mortgagee with regard to providing notice to subsequent parties in interest because it is not part of the record.
Howard relies on Semon v. Terhune, 40 N.J. Eq. 364, 2 A. 18 (Ch. 1885) and its progeny in support of its argument. Semon, like the case at bar, involved the effect of misindexing a *575 mortgage on a subsequent purchaser's constructive notice of its existence. The court held that the misindexing had no effect on the initial party's priority because only the record is necessary to provide notice and the index is not a part of that record. Id. at 367, 2 A. 18. See also Schwartz v. Grunwald, 174 N.J. Super. 164, 171, 415 A.2d 1203 (Ch.Div. 1980) (proper filing of notice of lis pendens is effective, regardless of indexing omission or mistake).
Defendants maintain that N.J.S.A. 46:21-1 must be read in conjunction with the indexing statute in order that the spirit and intent of the Recording Act be met. Chief among the cases and articles cited to support their argument is Jones, "The New Jersey Recording Act  A Study of its Policy," 12 Rutgers L.Rev. 328 (1957).
In an exhaustive and definitive treatment of the subject, Jones discusses the history and intent of the Recording Act.
An historical study of the [Recording] Act, as well as an analysis of the cases interpreting it, leads to the conclusion that it was designed to compel the recording of instruments affecting title, for the ultimate purpose of permitting purchasers to rely upon the record title and to purchase and hold title to lands within this state with confidence. [Id. at 329-330]
Clearly, the fundamental purpose of the Recording Act is to provide notice to subsequent parties in interest and "the protection of purchasers and encumbrancers of real property against undisclosed titles and liens." Solomon v. Canter, 113 N.J. Eq. 43, 45, 166 A. 158 (E. & A. 1933). See Van Dyke v. Carol Building Co., 36 N.J. Super. 281, 286, 115 A.2d 607 (App.Div. 1955) (Purchasers and encumbrancers "may rely upon the public records and in the absence of actual knowledge or of facts to put them on inquiry, are chargeable only with such facts as may be ascertained by reference thereto."). Once a mortgagee provides notice, a corresponding protection against subsequent titles and liens arises, ensuring that he may safely rely upon the statutes to establish the validity and priority of his mortgage. The issue which this court faces is whether the requisite notice is achieved through the mere recordation of a mortgage *576 or whether notice is achieved only if the mortgage is also properly indexed.
Jones points out that Semon was decided in 1885, before a legislative requirement even existed for a mortgage index. At that time, mortgage entries were few and infrequent, and title searchers were able to thumb through the record books to ascertain the contents with little trouble. As the number of entries grew, however, there also grew a practical need for indices to the mortgage books to provide the means for efficient title searches. Jones, op. cit., supra at 341-342. This need was codified in essentially its present form in 1898, but the Legislature has not since amended the recording statute or the indexing statute to reflect the extraordinary changes that have occurred in the custom and practice of title searching since then. Yet the New Jersey Supreme Court, in Palamarg Realty Co. v. Rehac, 80 N.J. 446, 404 A.2d 21 (1979), emphasized the fact that "title searching, upon which so much of our conveyancing practice rests, has been created in very large part without the aid of legislation," and that an investigation of the custom and practice of title searching is essential to determine current disputes in that area of law. See id. at 461, 404 A.2d 21.
For these reasons, and because this court is not bound by courts of equal jurisdiction, this court chooses to reexamine the Semon rule that the index is not considered in practice to be a part of the record. For purposes of this analysis, it is necessary to determine, from the evidence currently before the court, whether the current custom and practice of title searching require that the index be interpreted to be an integral part of the record.
In this regard, this court has had the benefit of the uncontroverted certification of Lawrence J. Fineberg, resident vice-president and associate regional counsel of defendant Chicago Title, an attorney fully familiar with the custom, practice and procedure of title searching in New Jersey. Fineberg states that the *577 "customary period for title searching is to go back 60 years to a warranty deed" in order to establish an unbroken chain of title for the premises in question. Once the searcher has gone back at least 60 years, he "adverses" each successive owner in the chain of title for the time period during which that owner held title in order to discover liens, restrictions, conveyances to third parties and the like which would encumber title. In performing the adversing task, Fineberg continues, "[i]t has long been the practice of New Jersey title searchers to check the alphabetical indices under the name of each owner of record to see whether he executed any instruments which would create adverse interests in the particular property."
Furthermore, "the only way to perform a search without relying on the indices is to turn each page of each record book in the county during the entire period of time that each individual appeared of record to be the owner until one discovers a particular instrument creating an adverse interest.... [T]here are literally thousands of record books in each county ... [and] [e]ach Mortgage Book contains at least 1,000 pages." Emphasis supplied.
Fineberg's certification unequivocally supports the title searchers' practice of relying solely upon the statutorily required alphabetical indices in performing title searches. This practice, and the resulting necessity of considering the index to be a part of the record so as to protect title searchers who rely upon it, is discussed favorably by several commentators. See Jones, op. cit., supra at 340 ("[T]oday the index must be considered as part of the record, and ... an instrument which is not properly indexed is not `duly recorded.'"); 29 N.J.Practice (Cunningham & Tischler, Law of Mortgages) (1975) at 106. Cunningham & Tischler explain: "A mortgage can hardly be deemed `duly recorded' unless it is properly indexed, if we are to take seriously the many statements by New Jersey courts to the effect that the object of the recording statutes is to prevent imposition upon subsequent bona fide purchasers and mortgagees; for without an index, searching for a mortgage in the *578 public records would be like looking for the proverbial needle in a haystack." Ibid.; footnote omitted.
Recent decisions also support this conclusion, as evidenced in Security Pacific Finance Corp. v. Taylor, 193 N.J. Super. 434, 474 A.2d 1096 (Ch.Div. 1984), where, although the court declined to make a finding that a search of the index is required in order to avail subsequent purchasers or mortgagees of the protection of the Recording Act, it stated that "[i]t cannot seriously be disputed that the index is a part of the record and that a purchaser or mortgagee has a duty to see to it that his instrument is properly recorded and indexed." Id. at 442, 474 A.2d 1096; citation omitted; emphasis supplied.
Furthermore, in Palamarg, our Supreme Court stated that:
[a]lthough the New Jersey Recording Act appears to say that a subsequent purchaser will always be deemed to have notice of, and be bound by, a prior recorded deed touching the same property, this is not in fact the case. The statutes have been consistently interpreted to mean that the subsequent purchaser will be bound only by those instruments which can be discovered by a "reasonable" search of the particular chain of title. That is, a prospective purchaser need only search the records to discover conveyances or other significant acts of an owner from the date the deed into that person was recorded until the date he relinquishes record title. A leading case in New Jersey is Glorieux v. Lighthipe, 88 N.J.L. 199 [96 A. 94] (E. & A. 1915). There Justice Swayze, speaking for a unanimous court said,
A purchaser may well be held bound to examine or neglect at his peril, the record of the conveyances under which he claims, but it would impose an intolerable burden to compel him to examine all conveyances made by every one in his chain of title. [88 N.J.L. at 203, 96 A. 94]
The same rule had been announced in the earlier case of Bingham v. Kirkland, 34 N.J. Eq. 229, 234 (E. & A. 1881). See also Solomon v. Canter, 113 N.J. Eq. 43, 45 [166 A. 158] (E. & A. 1933); Young v. Calley Land Co., 103 N.J. Eq. 478, 480 [143 A. 627] (Ch. 1928). [80 N.J. at 456-457, 474 A.2d 1096]
As Jones pointed out, "what is reasonable under the circumstances existing in one generation may be unreasonable under those existing in a subsequent generation." Jones, op. cit., supra at 330. It would be unreasonable to saddle a purchaser with the obligation of thumbing through every page of every record book in the county register's office, representing the entire period of time that an individual appeared of record to be the owner, in order to overcome the risk of improper indexing, *579 given the enormous number of real estate transactions which occur and are recorded daily in our state. Id. at 343. See also Solomon v. Canter, 113 N.J. Eq. 43, 45, 166 A. 158 (E. & A. 1933) (court admonished against any decision which would cause an "intolerable burden of labor and expense" on the recording system). A rule prohibiting title searchers from depending upon the alphabetical index would unduly hinder the commercial transactions in the State: lengthy title searches would cost more and would cause unreasonably long closings; potential purchasers, mortgagors and lenders would hesitate to be involved in commercial transactions where they could not be confident that a reasonable search of the record would reveal prior interests or where they feared being held liable for a clerk's misindexing error; and the cost of title insurance would increase.
The solution is that the recording and indexing statutes must be read in pari materia such that they are "construed together as a unitary and harmonious whole in order that each may be fully effective." See Clifton v. Passaic County Bd. of Taxation, 28 N.J. 411, 421, 147 A.2d 1 (1958). The indices must be construed to be part of the record so as to reflect the current custom and practice of title searching and to provide stability and certainty in real estate transactions so that subsequent parties in interest may safely rely upon the record.
Obviously, one effect of finding a duty in the mortgagee to see that his instrument is properly indexed will be that the mortgagee will be required to conduct "run down" searches or to employ some other similar mechanism for ensuring that his interest is properly indexed. Yet such a practice is seen as making good business sense anyway. See Jones, op. cit., supra at 344, n. 76. Furthermore, placing the burden upon the mortgagee to ensure that the requisite notice has been given is not out of step with the equitable maxim that where a loss must be borne by one of two innocent parties, equity will impose the loss on the party whose first act would have prevented the loss. See Monsanto Employees Fed. Credit *580 Union v. Harbison, 209 N.J. Super. 539, 542, 508 A.2d 262 (App.Div. 1986).
Plaintiff cites several cases from other courts in support of its contention that a valid recordation alone serves as constructive notice to all interested parties of an encumbrancer's interest in the property. These cases are distinguishable from the facts of the case at bar, but because they address similar issues, they merit consideration.
In New Jersey Bank v. Azco Realty Co., Inc., 148 N.J. Super. 159, 372 A.2d 356 (App.Div.), certif. den. 74 N.J. 280, 377 A.2d 684 (1977) a foreclosure action, the court held that plaintiff was entitled to priority over defendant, regardless of whether defendant had actual notice of the prior recording. While this court does not disagree with the decision in Azco, the facts clearly distinguish it from the case at bar. Azco involved a bank which waited over a year to properly record its mortgage, and then did so three days before defendant recorded its mortgage in the same property. Due to the two-day time lag in the recording clerk's office, defendant could not have had actual notice of plaintiff's prior interest.
Unlike the Azco plaintiff, which was unable to check for errors in indexing because its interest had not yet been recorded, plaintiff in the present case had 21 months after the recording of its interest to ascertain whether its mortgage was properly indexed. More importantly, unlike the facts in Azco, where neither party could have avoided the notice problem which occurred (it was due to the recording of plaintiff's interest on a Friday, and defendant's closing occurring on the following Monday, leaving less than one business day for the county clerk's office to record the interest), in the present case, plaintiff could have avoided the error in indexing by doing a "run down" subsequent to the recording, but failed to do so.
Plaintiff also cites to Lakewood Township v. Block 251, Parcel 34, 48 N.J. Super. 581, 138 A.2d 768 (App.Div. 1958) in support of its argument. In Lakewood, a clerk failed to index *581 the township's tax foreclosure action in the name of the last record owner of property and the court held that the error did not render the tax foreclosure judgment invalid for the subsequent purchaser's lack of notice. This case is easily distinguishable because the court found that defendant had alternative means of obtaining notice of the impending sale of the property (defendant could have done a tax search, notices were placed in the newspaper and a foreclosure complaint was filed in the clerk's office) and was therefore properly held to have had constructive notice. In the case at bar, however, defendants did not have any reasonable means of obtaining notice other than checking the indices.
Finally, plaintiff argues that, implicit in Chicago Title Insurance Company's duty to cure title defects if feasible, is its obligation to satisfy a prior mortgage encumbering title. However, title insurers have a duty to cure defects, if feasible, only in connection with an insured's title. Plaintiff was not insured by Chicago Title, and, in fact, when the title insurance was issued to Chrysler, Chicago Title had no knowledge of Howard's prior lien on the property, nor could it have had such knowledge.
For the reasons set forth above, the court is satisfied that defendants made a reasonable search of the chain of title by searching the indices alone, the deed and mortgage of Ijalba and Chrysler have priority over Howard's lien, and defendants' cross motion for summary judgment is granted.