**UNITED STATES of America, Plaintiff,**

v.

**1993 BENTLEY COUPE,
et al., Defendants.**

**No. CIV. A. 93–1282.**

United States District Court,
D. New Jersey.

Nov. 26, 1997.

As Amended Jan. 5, 1998.

Harold M. Hoffman, Englewood, NJ, Michael C. Silberberg, Diana D. Parker, John T. Hecht, Morvillo, Abramowitz, Grand, Iason & Silberberg, New York, NY, for Claimant Manchester Fund, Ltd.

Peter G. O'Malley, Office of U.S. Attorney, Newark, NJ, for Plaintiff.

## OPINION

WOLIN, District Judge.

Once again, the perils and pitfalls of foreclosure proceedings have spun a large and intricate web. The property that is at the center of the web is 78 Fox Hedge Road. The United states of America ("United States") and Manchester Fund, Ltd. ("Manchester") spun the web independently, and now they are stuck in it as they pursue the prize at the center. The United States began the web in 1993 when it filed a Complaint in this Court for forfeiture on 78 Fox Hedge Road. The web became large and intricate when the United States misindexed its *lis pendens*. Manchester enlarged and spun over the United States' web in 1994 when it purchased the tax lien on 78 Fox Hedge Road from the Tax Collector of Saddle River. During the

next three years, the path to the center of the web became more distant and more difficult to find as the United States and Manchester proceeded, or failed to proceed, in their respective actions. Eventually, a Superior Court in New Jersey ruled that Manchester could foreclose on 78 Fox Hedge Road because the original owners had failed to redeem property.

The United States now moves this Court to enter an order forfeiting the property to it because it was first in time. Manchester opposes the United States' motion, argues that it is an innocent owner, and moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. After picking away the superfluous strands of the web, the Court finds that the United States cannot complete the journey to the center of the web because of the impenetrable impediments in its path. On the other hand, the Court concludes that Manchester has a direct path to the center of the web. Thus, the Court finds in favor of Manchester. The Court has decided this motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure

## BACKGROUND [1]

On March 25, 1993, the United States filed a Verified Complaint in this Court for civil forfeiture of Victor Matos Peralta's and Gloria Reynoso's ("defendants") personal and real property. Included in the *in rem* forfeiture proceeding was 78 Fox Hedge Road, Saddle River, New Jersey, the property in dispute in this case. On March 30, 1993, the United States filed an Amended Complaint. Essentially, the United States' Complaint alleged that defendants had purchased the properties with the proceeds of drug trafficking. The United States, therefore, asserted that it could forfeit the properties pursuant to 18 U.S.C. § 981 and 21 U.S.C. § 881(a)(6). On March 26, 1993, the United States filed a notice of *lis pendens* in Bergen County, the county in which the property is located. The United States, however, misfiled the *lis pendens*.

On April 23, April 30, and May 7, 1993, the United States published notice of its foreclo-

sure proceedings in *The Record,* which covers Bergen County, in *The Jersey Journal,* which covers Hudson County, and in *The New York Post.* After this Court determined that the United States had probable cause to believe that the properties had been purchased with "drug money," the United States seized the property pursuant to a warrant for arrest *in rem.*

On October 6, 1994, the Tax Collector of Saddle River held her statutorily mandated annual sale of properties that had unpaid municipal charges. The property located at 78 Fox Hedge Road was involved in the sale because defendants had failed to pay the property taxes. Manchester purchased the tax lien on 78 Fox Hedge Road, and the Tax Collector issued a tax sale certificate for the property to Manchester. On October 21, 1994, Manchester recorded its tax sale certificate in the Bergen County Register's Office.

On February 17, 1995, this Court administratively terminated the United States' action. The case had been stayed pending the outcome of a New York state criminal prosecution against Matos.

After the two-year statutory waiting period for moving for foreclosure had transpired, Manchester filed a foreclosure action in the Superior Court of New Jersey, Law Division, Bergen County, on December 3, 1996. During the two-year waiting period, Manchester paid all the outstanding taxes assessed on 78 Fox Hedge Road. At the time it filed the foreclosure action, Manchester hired a title company to conduct a title search on 78 Fox Hedge Road. Because the United States had misfiled its notice of *lis pendens,* the title company was unable to discover that the United States had instituted a forfeiture action in federal court. Manchester did not have any personal knowledge that the United States had filed a notice of *lis pendens.*

On January 15, 1997, Manchester followed the state court's instructions and served its summons and complaint in its foreclosure suit by publication in *The Record.* The following day, United State Marshal Dominick Russo called Harold Hoffman, Manchester's

---

1. The Court will not insert cites for the facts because the facts are generally not in dispute.

attorney, and left a voicemail message indicating that he had notice of the foreclosure action and that the United States had already instituted a forfeiture action involving 78 Fox Hedge Road. On February 14, 1997, Assistant United States Attorney Peter O'Malley called Hoffman and said that he had notice of the foreclosure action.

On February 21, 1997, the state court issued an order that permitted defendant Reynoso[2] to redeem the property if she paid Manchester an amount equal to the outstanding tax liabilities plus costs by April 14, 1997. On February 25, 1997, O'Malley and Hoffman talked for ten minutes about the foreclosure proceedings. On the same day, this Court reopened the United States' forfeiture action.

On Friday, April 11, 1997, the business day before the final opportunity for redemption of the property, O'Malley called Hoffman and asked if Manchester would adjourn its foreclosure action because the United States had a pending action in this Court. Hoffman declined O'Malley's request. On Monday, April 14, 1997, Hoffman left O'Malley a voicemail message in which he asked O'Malley to call him so that they could discuss the property. O'Malley never returned the phone call.

Reynoso failed to redeem the property on April 14, and the Tax Collector of Saddle River, who was following the state court's order, issued an affidavit stating that Reynoso had failed to make the requisite payment on time. On the same day, the United States applied to this Court for a temporary restraining order and for an order to show cause why the state proceedings should not be stayed pending the conclusion of the federal forfeiture case. The Court granted the United States' motions. A Deputy Marshal delivered a copy of the order to the Tax Collector of Saddle River that morning. The United States claims that the Tax Collector issued the affidavit in violation of this Court's order. Manchester did not received notice of the order for two days because the United States dialed the wrong facsimile number when it sent a copy of the order to Hoffman's office.

The following day, the state court issued a final order of foreclosure vesting Manchester with fee simple title to the property. The United States never intervened or filed a claim in the state court proceedings.

On April 29, 1997, the United States moved the state court to grant post-judgment intervention and/or to vacate the final judgment vesting title to Manchester. On October 10, 1997, the state court denied both motions finding that the United States had misindexed the *lis pendens,* had not intervened in a timely fashion, had chosen to stay in federal court, had sat on its rights, that Manchester had not acted in bad faith, and that the United States could still seek relief in federal court.

On April 24, 1997, Manchester filed a verified claim in this Court. On May 2, 1997, Manchester filed an answer to the United States' forfeiture Complaint. Subsequently, this Court issued an order stripping defendants of all rights to 78 Fox Hedge Road.

The United States moves for a final order of forfeiture. Manchester moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## DISCUSSION

### 1. Standard for Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

---

**2.** In 1996, Matos Peralta died, and Gloria Reyno- so became the sole owner of the property.

(1986); *United States v. 225 Cartons,* 871 F.2d 409, 419 (3d Cir.1989).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence ad determine the truth of the master but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *See id.*

## 2. Statutory and Case Law

The United States seized the property in this case pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6). The former statute makes property that is purchased with the proceeds of unlawful activity subject to forfeiture to the United States. 18 U.S.C. § 981(a)(2), however, exempts such property when it belongs to an innocent owner: "No property shall be forfeited under this section to the extent of the interest of an owner or lienholder by reason of any act or omission established by that owner or lienholder to have been committed without the knowledge of that owner or lienholder." 21 U.S.C. § 881(a)(6) provides that all proceeds traceable to a drug transaction are subject to forfeiture of the United States. 21 U.S.C. 881(a)(6) also provides an exception for innocent owners: "[N]o property shall be forfeited under this paragraph. to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." [3]

 A claimant has the burden of proving that she is an innocent owner; i.e., she must show that she is an owner and that she did not know about or consent to the improper use of the property. *See United States v. One 1973 Rolls Royce,* 43 F.3d 794, 805 (3d Cir.1994) [hereinafter *Rolls Royce* ]; *United States v. Parcel of Real Property Known as 6109 Grubb Road,* 886 F.2d 618, 623 (3d Cir.1989) [hereinafter *6109 Grubb Road].*

State law generally determines ownership. *See Rolls Royce,* 43 F.3d at 805 n. 8.

The United States and Manchester dispute whether the innocent owner defense applies to situations where the owner is unaware of the illegal activity when its occurs, but becomes aware of it before the property is transferred to him.[4] In particular, the United States argues that Manchester is not an innocent owner because it knew about the United States' forfeiture action before the state court found in Manchester's favor. Manchester, on the other hand, asserts that such Knowledge is irrelevant and that the critical issue is whether it knew about or was involved in the illegal activity when it occurred. The critical question, therefore, is whether a post-illegal-act transferee can be an innocent owner when it had knowledge of a forfeiture action in federal court? The following discussion focuses on 21 U.S.C. § 881 because the Supreme Court and Third Circuit have only discussed and interpreted that statute's innocent owner defense.

In *United States v. Parcel of Land Buildings, Appurtenances and Improvements, Known as 92 Buena Vista Avenue, Rumson, N.J.,* 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) [hereinafter *92 Buena Vista* ], the Supreme Court held, *inter alia,* that the exception for innocent owners is not limited to bona fide purchasers, *id.* at 123, 113 S.Ct. at 1134, and that the relation back provision of the civil forfeiture statute does not apply to a post-illegal-act transferee who proves that she is an innocent owner. *Id.* at 128, 113 S.Ct. at 1137. At the end of its opinion, the Court noted that it was not ruling or the issue of whether a transferee could be an innocent owner if he learned about the illegal activity before accepting the forfeitable proceeds. *Id.* at 129–30, 113 S.Ct. at 1137–38.

The Third Circuit has answered the Supreme Court's open question affirmatively. In interpreting the innocent owner exception under 21 U.S.C. § 881(a)(7), which makes real property subject to forfeiture when it is

---

3. The innocent owner defense is also contained in §§ 881(a)(4) and (7).

4. The United States and Manchester appear to be talking past each other on this issue. The United States refers only to § 981(a)(2) whereas Manchester discusses only § 881.(a)(6).

used or intended to be used to facilitate drug transactions, the Third Circuit held that a person who had not consented to her real property being used for drug transactions was an innocent owner even though she had knowledge of the property's illegal use.· *6109 Grubb Road,* 886 F.2d at 626. In *Rolls Royce, supra,* the Third Circuit explained its holding in *6109 Grubb Road:* "The *6109 Grubb Road* approach essentially precludes forfeiture of property that is owned by persons who: 1) obtained an interest in the property after the illegal use; and 2) lacked knowledge about its illegal use at the time the illegal use occurred." 43 F.3d at 801. Thus, "a post-illegal-act transferee who did not know about the act that created the taint at the time it occurred will be an innocent owned even if he or she knew about the taint at the time he or she received the property." *Id.* The fact that the Third Circuit interpreted the innocent owner defenses under §§ 881(a)(4) and (7) does not alter this Court's analysis of the innocent owner defense under § 881(a)(6) because the defenses are to be construed consistently. *See id.* at 819.

In *Rolls Royce,* the criminal defendant paid his attorney with a Rolls Royce that had been, purchased with money obtained through drug trafficking. *Id.* at 799–800. The United States seized the car pursuant to 21 U.S.C. 881(a)(4), which provides for the forfeiture of "conveyance" used or intended to be used to facilitate transactions involving drugs. *Id.* at 799. In explaining the exception for innocent owners, the Third Circuit concluded that a person could claim the innocent owner defense under § 881(a)(4) so long as she proved that she lacked knowledge, lacked consent, or lacked willful blindness of the improper use of the property. *Id.* at 814.

The panel then addressed the fact that its opinions insulated every post-illegal-act transferee from civil forfeiture. *Id.* at 818. The panel explained that it reached the result it did because it did not want to apply the language of the statute differently to pre- and post-illegal-act transferees.

The principal goal of §§ 881(a)(4) and (7), which are aimed at forfeitures of property used to facilitate drug trafficking, is to give owners of property an incentive to prevent the use of that property in the drug trade. People who are not owners at the time the act is committed are simply in no position to prevent the improper use. Penalizing such owners would do little to accomplish the ends of those forfeiture statutes.

*Id.* at 819. The panel noted that its argument was suspect with regards to § 881(a)(6) because that provision "appears to include" property in the possession of post-illegal-act transferees. *Id.* at 819 n. 28.

According to the state court, Manchester is now the owner of the property. In addition, Manchester had no knowledge that the property was purchased with the proceeds of drug trafficking until after the illegal activity, had occurred. Thus, Manchester satisfies the requisite elements of the innocent owner defense. The United States' focus on Manchester's knowledge of the United States' forfeiture proceeding misses the mark because the Third Circuit clearly state § i that lack of knowledge of the *criminal act* enables one to claim the innocent owner defense.

The United State also argues that publishing its forfeiture action in the newspapers in 1993 and the decals on the property placed Manchester on notice that it could not obtain rights superior to that of the United States. The Court finds that argument to be unpersuasive for three reasons. First, the proper method of giving notice to potential buyers is to file a *lis pendens* with the appropriate state or county agency. The United States made the first of several tactical and procedural errors when it misindexed its *lis pendens.* Manchester, on the other hand, performed properly when it hired a title company to determine whether any liens or interests were attached to 78 Fox Hedge Road.

Second, the publication in the newspapers in 1993 serves to give notice to parties that have an interest or claim to the property at the time of the notice. Not only did Manchester not exist in 1993, it also had no interest or claim to the property. Third, the United States should have intervened or sought this Court's powers as soon as it had notice of the state court proceedings. On the

contrary, the United States waited nearly three months before it asked Manchester for an adjournment and requested this Court to grant it a temporary restraining order. With the aid of hindsight, this Court now realizes that its order enjoining the state court proceedings was superfluous and out of time. In sum, if the United States was so concerned about the property, it would have acted sooner rather than later.

The Court notes that its reasoning and decision apply to the innocent owner defense under 18 U.S.C. § 981(a)(2). Although the Third Circuit has not interpreted that provision, this Court finds that the Third Circuit would not have a different interpretation for "knowledge" under 18 U.S.C. § 981(a)(2) than it does for 21 U.S.C. § 881(a)(6). Such a result would be anomalous and would lead to confusion in the district courts of the Third Circuit. One other district court has reached the same conclusion. *See United States v. Eleven Vehicles,* 836 F.Supp. 1147, 1160 (E.D.Pa.1993).

### 3. The United States' Other Arguments

■ The United States asserts that the "first in time rule" mandates that where two courts seek to assert *in rem* jurisdiction over a piece of property, the first court to assert jurisdiction has the exclusive power to decide the case without interference from other courts. *See Princess Lida v. Thompson,* 305 U.S. 456, 458–60, 59 S.Ct. 275, 277–78, 83 L.Ed. 285 (1938). Although this Court follows the first in time rule, it finds that it does not apply to this case for three reasons. First, this Court had administratively terminated the United States' action in 1995 and did not reopen it until after the state court proceedings had already begun. Second, the United States should have been more diligent in pursuing its interests; i.e., should have sought an injunction or intervened earlier than it did. Third, the first in time rule only prohibits other courts from making decisions that will conflict with the first court's jurisdiction. As the Supreme Court stated in *United States v. Klein,* 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938): "Other courts having jurisdiction to adjudicate rights in the property do not, because the property is possessed by a federal court, loss power to render any judgment not in conflict with that court's authority to decide question within its jurisdiction and to make effective such decisions by its control of the property." *Id.* at 281, 58 S.Ct. at 538. In this case, the state court did not invade this Court's jurisdiction to decide whether the United States could forfeit on 78 Fox Hedge Road when it decided that Manchester had complied with New Jersey's tax foreclosure statute. In fact, in the end of its opinion, the state court stated that the United States could still seek relief in this Court.

■ The United State@ also argues that Manchester filed its claim out of time because it did not file a claim within ten days of its purchase of the tax lien. Supplemental Rule C(6) of the Federal Rules of Civil Procedure requires a claimant with an interest in property that is subject to forfeiture to file a claim within ten days after process as been executed. The United States contends that Manchester acquired its interest in the property on October 1994, the date it purchased the tax lien. Purchasing a tax lien, however, does not constitute an interest in property because that act is only the first step in obtaining an interest in property. The Court concludes that Manchester obtained its interest in property on April 15, 1997, the date that the state redemption and foreclosure proceedings were completed Thus, Manchester's filing on April 24, 1997, satisfied the requirement that it file its claim within ten days.

The Court will not address the United States' remaining arguments because they lack merit and do not warrant a discussion.

### CONCLUSION

The Court has disentangled the web and determined that Manchester has a clean path to the center. Thus, the prize at the center of the web belongs to Manchester, not the United States. The United States, on the other hand, is trapped in the web because of its mistakes and failure to act quickly. For the reasons stated *supra,* the Court will grant Manchester's motion for summary

judgment and will deny the United States' motion for a final order of forfeiture.