714 A.2d 366

LES REALTY CORP. AND BEVERLY J. SMITH, PLAINTIFFS,
v. RITA HOGAN, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Union County

Decided February 17, 1998.

*Matthew Baldini*, for plaintiff (*Cole, Schotz, Meisel, Forman & Leonard* attorneys).

Rita Hogan, *pro se.*

BOYLE, P.J.Ch.

In cross motions for summary judgment[1], the issue before the court is whether defendant Rita Hogan's (Hogan) child support judgment, entered before but docketed after Les Realty Corp. (Les Realty) recorded its mortgage, has priority. Specifically, this court addressed the effect of the "first in time, first in right" rule, *N.J.S.A.* 46:22–1, on child support judgments entered prior to the effectuation of the *Automated Child Support Enforcement System* (ACSES), *N.J.S.A.* 2A:17–56.23a, in relation to statewide constructive notice. This court also explored the rule's application to property located in the same county in which the judgment was obtained.

The facts in this case are not in dispute. This action was brought by plaintiffs Les Realty and Beverly Smith in an effort to foreclose and bar Hogan from any equity redemption in the premises commonly known as 939 Hussa Street, Linden, New Jersey (the Premises). On July 30, 1992, Jerry Hogan and Cornelis Hogan executed a note in the sum of $133,993.12 and delivered a mortgage on the Premises to Associates Financial Services, Les Realty's assignor. The mortgage was recorded on August 6, 1992 in the Union County Clerk's Office in Mortgage Book 4598, page 0011.

Associates Financial Services commenced the within foreclosure action on May 31, 1995. On December 4, 1996, Associates assigned the final judgment of foreclosure to Les Realty, plaintiff. Final judgment was entered on January 12, 1996. On March 5, 1997, the Sheriff sold the subject premises to Les Realty at a sheriff's sale. The Sheriff executed and delivered the deed to Les

---

[1] Motions for summary judgment were not filed by the parties; however, the court treated the parties' arguments as such because no genuine disputes of material fact existed. *See Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 666 *A.2d* 146 (1995).

Realty on March 24, 1997. On June 25, 1997, Les Realty sold the property to Beverly J. Smith.

On June 18, 1991, the Superior Court of New Jersey, Family Part, Union County, entered a child support judgment in the amount of $21,569.40 against Jerry Hogan and in favor of Rita Hogan, defendant. This judgment was not docketed until September 1, 1992, nearly one month after the mortgage had been recorded.

Hogan contends that her child support judgment became a lien when it was entered on the Union County Civil Judgment and Order Docket on June 18, 1991. Les Realty maintains that the child support judgment entered on behalf of Hogan did not have the effect of a statewide lien until it was docketed by the Clerk of the Superior Court in Trenton on September 1, 1992.

Based upon the New Jersey statutory law and precedent, this court finds that Hogan's child support judgment did not become a lien until September 1, 1992; therefore, since Les Realty's lien was recorded prior to this date, Les Realty's lien has priority.

Generally, the parties' priorities with regard to liens on property are determined by the dates of recording of the mortgages or docketing of the judgments. *See N.J.S.A.* 2A:16–1 (governing time from which judgment binds real estate);[2] *see also R.* 1:13–8; Pressler, *Current N.J. Court Rules,* comment on *R.* 1:13–8 (1997) (discussing priorities of liens and encumbrances). The basic rule is "first in time, first in right." *N.J.S.A.* 46:22–1; *see also* 29 *New Jersey Practice, Law of Mortgages,* §§ 101, at 371; 102, at 382–95; 104, at 413 (Cunningham & Tischler) (1975). The purpose of this rule and *N.J.S.A.* 2A:16–1, 2A:16–11 and 2A:16–16,

---

[2] *N.J.S.A.* 2A:16–1 states, "[n]o judgment of the superior court shall affect or bind any real estate, but from the time of the actual entry of such judgment on the minutes or records of the court ."

This should be read in conjunction with *N.J.S.A.* 2A:16–11 and *N.J.S.A.* 2A:16–16.

is to give constructive notice to subsequent purchasers, encumbrancers and others who may deal with title to real estate upon which a judgment constitutes a lien. *Jones v. Parker,* 107 *N.J.Super.* 235, 240, 258 *A.2d* 26 (App.Div.1969). Thus, once a judgment is docketed by the Clerk of the Superior Court, it serves as constructive notice to subsequent purchasers and encumbrances, thereby protecting purchasers who have made a reasonable search of the record title. *See N.J.S.A.* 2A:16–1 (governing time from which judgment binds real estate); *N.J.S.A.* 2A:16–11 (governing entry of judgment on civil docket); *N.J.S.A.* 2A:16–16 (governing indices of the civil order and judgment docket); *see also New Brunswick Sav. Bank v. Markouski,* 123 *N.J.* 402, 411–13, 587 *A.2d* 1265 (1991) (discussing the purpose of the recording provisions); *Brescher v. Gern, Dunetz, Davison, & Weinstein,* 245 *N.J.Super.* 365, 585 *A.2d* 961 (App.Div.1991) (discussing the interplay of the above statutes).

*Brescher* involved a quiet title action brought against a law firm by its former client in a matrimonial action. Defendant law firm appealed the trial court's determination that defendant's judgment against its former client did not constitute a lien on property that the client sold after judgment, but before the judgment was docketed by the Clerk in Trenton. Similar to defendant Hogan in this case, defendant law firm argued that the judgment should be considered a valid lien upon its entry on the Essex County Court's minutes and records by the Essex County Clerk. *Brescher, supra,* 245 *N.J.Super.* at 368, 585 *A.2d* 961. Defendant law firm argued that Essex County's "Local Filing Project," approved by the New Jersey Supreme Court, allowed all lawsuit papers pending in Essex County to be filed solely with the Essex County Clerk. *Id.* at 369, 585 *A.2d* 961. This eliminated the prior duplicate filing requirement in which the original papers were filed in Trenton and copies retained in Essex County. *Id.*

The Appellate Division rejected defendant's argument. Instead, the court analyzed *N.J.S.A.* 2A:16–1, 2A:16–11, 2A:16–16 and *R.* 4:47 (governing the time a judgment lien may affect real

estate and the duty of the Clerk to enter judgments). The court reasoned that a purchaser cannot be put on constructive notice simply by the entry of judgment in the records of a county different from the location of the property, even if a direct filing system exists.[3] *See id.* at 368–69, 585 *A.2d* 961. In order to be considered statewide constructive notice, a judgment must be docketed in the civil docket kept by the Clerk of the Superior Court in Trenton. At the moment a judgment is docketed in Trenton, it becomes a statewide lien on the property. *Id.* at 371–72, 585 *A.2d* 961. Thus, under the "first in time, first in right" rule, a mortgage recorded prior to the *docketing* of a judgment has priority.

Our inquiry does not end here. This court has also explored whether a purchaser is on constructive notice when, as here, the Superior Court judgment and the real property are both located in the *same* county. *Brescher, supra,* involved a judgment and property located in *different* counties.[4] This is significant because a judgment under *N.J.S.A.* 2A:16–1 has an immediate *county wide* effect, provided that the judgment has been *properly entered* on the minutes and records of the county.[5] Our research has revealed conflicting opinions as to whether title companies regularly search both the county lien records and the Clerk's Civil Judgment and Order Docket in Trenton.[6] The Trenton search is obtained from Charles Jones, Inc. However, the county lien

---

[3] The court briefly distinguishes this from constructive notice where the Superior Court Judgment and property are located in the same county. *See Brescher, supra,* 245 *N.J.Super.* at 372–73, 585 *A.2d* 961. This issue will be addressed later.

[4] In *Brescher,* the judgment was entered in Essex County and the real property was located in Hunterdon County.

[5] The correlation between proper entry and constructive notice has since been discussed by Judge Margolis in *Howard Sav. Bank v. Brunson,* 244 *N.J.Super.* 571, 582 *A.2d* 1305 (Ch.Div.1990).

[6] This conflict is irrelevant and does not affect the reasoning or decision in this case.

search is personally performed by the title searchers. Thus, even if a judgment is not docketed in Trenton, as long as a judgment is properly docketed in the County Judgment Book, the title searcher should be able to find it through the county search.

This distinction is revealed in the closing paragraph of Judge Petrella's opinion in *Brescher, supra,* where he wrote:

> Until the defendant's judgment was recorded as a lien in the Civil Judgment and Order Docket by the Clerk of the Court in Trenton, *the lien had no effect outside of Essex County and was not 'notice to the world'....* Recording of documents is largely statutory under the recording acts and *may give notice to the county* but not beyond [sic] without statutory authorization.

> [*Brescher, supra,* 245 *N.J.Super.* at 372–73, 585 *A.2d* 961 (emphasis supplied).]

In this matter, judgment and the real property are both located in Union County. The child support judgment was entered in an amount certain, in the Superior Court Family Part, Union County, on June 18 1991. Based on the above analysis, if the judgment was properly entered in the Union County Judgment Book, the judgment should have been discoverable by a reasonably diligent county title search.

In compliance with this, the court required Les Realty to furnish the court with proofs as to: (1) what the Union County records revealed, and (2) whether a customary county judgment search conducted by title searchers in general would have revealed the child support judgment thereby creating constructive notice of the lien. In response, Les Realty provided this court with evidence demonstrating that the Union County records did not reveal the county child support judgment and that a general search would not have revealed the judgment.[7] For these reasons, this court is satisfied that Les Realty was not on notice until September 1, 1992.

The next step in our analysis is whether the "first in time, first in night" rule equally applies to child support judgments in light of

---

[7] Les Realty asserted that a child support judgment would not have been revealed as a lien because such judgments were not considered liens on property until September 1, 1992.

New Jersey's special treatment of the collection of monetary awards for child support. In order to help ensure payment of child support, the New Jersey legislature passed *N.J.S.A.* 2A:17–56.23a, the *Automated Child Support Enforcement System* (ACS-ES). The statute was enacted to help remedy the serious problem of unpaid child support by ensuring liens on real estate owned by the debtor.[8] According to ACSES, each child support payment becomes a judgment by operation of law both on and after the date it becomes due. *N.J.S.A.* 2A:17–56.23a. New Jersey Court Rule 4:101 was amended to permit the use of ACSES as the civil order and judgment docket for child support judgments. Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 4:101–1 (1997). Thus, a child support judgment is "docketed" for lien purposes when it becomes due. ACSES does not automatically prioritize child support judgments, but rather, the effect of ACSES is to avoid the barrier of constructive notice needed to effectuate a lien, thereby eliminating the problem presently before this court.[9]

For the purposes of this matter, it is significant that ACSES was not implemented until September 1, 1992. Since Hogan's child support judgment was never docketed prior to this date, Hogan's child support judgment did not become a statewide lien on the subject property until September 1, 1992. According to *R.* 4:101–1(b), once docketed via ACSES, child support judgments "shall have the *same* force and effect as entry of an abstract in the Civil Judgment and Order Docket...." *R.* 4:101–1(b) (emphasis added). Thus, child support judgments are not given any special treatment in so far as priority of liens and are

---

[8] A system for expediting child support cases was originally adopted in accordance with the *Federal Child Support Enforcement Amendments of 1984,* Pub.L. No. 98–378 (codified as amended 42 U.S.C.A. § 601). *See N.J.S.A.* 2A:17–56.23 to –56.26.

[9] Prior to ACSES, many child support judgments were not docketed in Trenton. Thus, when the awards went unpaid, the judgments could not qualify as liens on the debtor's property. The ultimate result was that many child support awards remained uncollected.

therefore subject to the general rule of "first in time, first in right."

Since Hogan's child support judgment was not docketed until September 1, 1992, one month *after* Les Realty recorded its mortgage, this court must apply the "first in time, first in right" rule. Les Realty's mortgage thus has priority over Hogan's lien.

Accordingly, summary judgment is granted in favor of Les Realty.