753 A.2d 740 (1999)
332 N.J. Super. 336
MANCHESTER FUND, LTD., a New Jersey Corporation, Plaintiff,
v.
FIRST AMERICAN TITLE INSURANCE COMPANY, and First Jersey Title Services, Inc., Defendants.
Superior Court of New Jersey, Law Division.
Decided October 22, 1999.
*741 Harold M. Hoffman, Englewood, for plaintiff Manchester Fund Ltd.
Dennis M. Gonski, Dollinger, Gonski & Grossman, Carle Place, NY, for defendants First American Title Insurance Co. and First Jersey Title Services, Inc.
WALSH, J.S.C.
This matter is before the Court on opposing motions by plaintiff, Manchester Fund Ltd. ("Manchester Fund"), and defendants First American Title Insurance Company and First Jersey Title Services, Inc. ("First American" and "First Jersey," respectively) for summary judgment pursuant to R. 4:46-2. For the reasons set forth below, defendants' motion is granted.
The facts are not in dispute. Victor Matos Peralta and Gloria Reynoso owned real property located at 78 Fox Hedge Road, Saddle River, New Jersey (the "Property"). On March 25, 1993, the United States began an in rem proceeding seeking, among other things, a civil forfeiture of this Property. The United States claimed that the Property was purchased with the proceeds of drug trafficking. See 18 U.S.C. § 981; 21 U.S.C. § 881(a)(6). On March 26, 1993, the United States filed a Notice of Lis Pendens in Bergen County. However, the notice was indexed under "United States of America" rather than the last name of the Property's title holder "Raynoso."[1]
Pursuant to law, the United States published notice of the forfeiture proceedings in the New York Post, The Jersey Journal, and The Record in April and May 1993. Shortly thereafter, the Federal District Court for the District of New Jersey found probable cause to believe that the Property was purchased with drug money and permitted the United States to seize the Property pursuant to an Order of Arrest.
Meanwhile, the owners of the Property ceased paying property taxes. On October 6, 1994, the Tax Collector of Saddle River conducted a tax sale which included the Property. That day Manchester Fund purchased the tax lien on the Property. On October 21, 1994, the Tax Collector issued a tax sale certificate for the Property and Manchester Fund duly recorded the tax sale certificate in the Bergen County Register's Office. Subsequently, in December of 1996, Manchester Fund commenced a tax lien foreclosure in the Superior Court, Chancery Division, Bergen County against the owner of the Property.
At or about the same time, Manchester Fund applied to First Jersey, an agent of First American, for a title insurance policy *742 covering the Property. An AGREEMENT TO ISSUE POLICY ("Agreement") was issued on February 18, 1997 by First American. The Agreement provides exceptions to the anticipated Title Insurance Policy. As to existing defects the Agreement notes:
If any defects, liens or encumbrances existing at Commitment Date are not shown in Schedule B, we may amend Schedule B to show them. If we do amend Schedule B to show these defects or encumbrances, we shall be liable to you .... unless you knew of this information and did not tell us about it in writing.
On January 15, 1997, Manchester Fund served a summons and complaint for forfeiture through publication in The Record.[2] Shortly thereafter, the United States Marshal's Office and the United States Attorney's Office became aware of the state foreclosure proceeding. On February 25, 1997, an Assistant United States Attorney for the District of New Jersey ("AUSA") informed Manchester Fund's attorney that the United States had filed a Notice of Lis Pendens on the Property with the Bergen County Register's Office in March 1993. Because the recorded Notice had been improperly indexed under "United States of America", rather than the last name of the title holder "Reynoso," it was impossible to find under ordinary and customary title search procedures.
Manchester Fund did not notify either First Jersey or First American of the United States' claim. Instead it made a request of First American in March for the text of the title insurance policy to be issued. The policy's text was provided to Manchester Fund on April 8, 1997.
The AUSA again contacted Manchester's attorney on April 11, 1997, this time seeking an adjournment of the foreclosure action. Manchester Fund's attorney declined the adjournment request. Manchester Fund did not notify either of the defendants of the AUSA's request nor did it advise the defendants of the United States' claim that a Notice of Lis Pendens had been filed. The foreclosure proceeded and final judgment was issued by the Superior Court on April 15, 1997, awarding Manchester Fund title to the Property in fee simple. The judgment was recorded in the Bergen County Register's Office.
On April 15, 1997, First Jersey delivered to Manchester an updated AGREEMENT TO ISSUE POLICY, containing hand written amendments, and a written invoice for the title policy and attendant searches of $4,600.35. An additional amendment to the AGREEMENT TO ISSUE POLICY reflecting an unrelated judgment against Victor Matos was delivered to Manchester Fund on April 16, 1997.
Manchester Fund received written notice of the proceedings commenced against it by the United States in Federal District Court on April 18, 1997. The action sought to strip Manchester Fund of its title to the Property and, among other things, was based on the Notice of Lis Pendens filed in March 1993. Manchester Fund promptly notified First Jersey and First American of the claims and requested they provide a legal defense.
Approximately ten days later, on April 29, 1997, Manchester Fund received notice that the United States sought intervention in the Superior Court foreclosure proceedings. Specifically, the United States sought to vacate Manchester Fund's April 15, 1997 final judgment of foreclosure and to strip it of title to the Property. Manchester again notified defendants of these claims and requested that a legal defense be provided.
On May 2, 1997, First American notified Manchester Fund that it would not provide a defense in either the federal or state court actions. First American's refusal was based on the fact that Manchester *743 Fund knew that the United States had asserted a claim to the Property and failed to communicate that knowledge to the company in material breach of its policy. Manchester Fund protested defendants' refusal by letter dated May 5, 1997 and notified defendants that it would retain private counsel to defend against these claims if a defense was not provided.
In a decision dated October 10, 1997, the Superior Court, Chancery Division, Bergen County, denied the United States' application to intervene in the foreclosure action and to vacate Manchester Fund's April 15, 1997 final judgment. The Chancery Division rulings were appealed to the Appellate Division and were affirmed in an unpublished decision. Manchester Fund, Ltd. v. Reynoso A-1678-97 T3 (App.Div., December 28, 1997).
The matter proceeded in the District Court for the District of New Jersey. On November 26, 1997, the District Court determined that Manchester was entitled to assert the innocent owner defense to the forfeiture proceeding. The District Court denied the United States' application to strip Manchester of title to the Property and granted Manchester Fund's motion for summary judgment, thereby sustaining its claim of good and valid title to the Property. United States v. 1993 Bentley Coupe, 986 F.Supp. 893 (D.N.J.1997).
After the outcome of both federal and state proceedings, defendants issued a title insurance policy for the Property on May 4, 1998. Subsequently, on May 8, 1998, Manchester asserted that the issued policy did not conform to the AGREEMENT TO ISSUE POLICY, because the issued policy contained an "after the fact" exclusion for claims of the United States. Manchester Fund ultimately expended $108,486.48 in counsel fees in order to defend the federal and state court claims filed by the United States and seeks recovery of these fees and costs in this action.
It is undisputed that on February 25, 1997, shortly after First American forwarded the AGREEMENT TO ISSUE [THE TITLE INSURANCE] POLICY, the attorney for Manchester Fund learned of the Notice of Lis Pendens from the AUSA pursuing the claim on behalf of the United States. Nevertheless, the attorney for Manchester Fund chose not to advise the insurance company of this critical information. Instead, he requested a copy of the final policy and examined its language. Satisfied that the Notice of Lis Pendens, however indexed, would nevertheless be regarded as part of the public record and thus covered under the policy, the attorney proceeded apace to finalize the policy details and to obtain the title insurance policy.[3]
Manchester Fund argues that its attorney acted in an appropriate manner and the company squarely fits within the terms of the policy. The policy language specifically excludes responsibility only for:
Defects, liens, encumbrances, adverse claims or other matters:
. . . .
not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy. (emphasis added).
Since the Notice of Lis Pendens, whether mis-indexed or not, was, in the view of Manchester Fund, part of the public records, it claims entitlement to coverage.[4]
*744 First American disagrees. According to the defendants, Manchester Fund had an obligation to inform it of the mis-indexed Notice of Lis Pendens and the failure to do so deprived it of any benefits conferred by the title insurance policy. Pioneer National Title Insurance Co. v. Lucas, 155 N.J.Super. 332, 382 A.2d 933 (App.Div.1978), aff'd o.b., 78 N.J. 320, 394 A.2d 360 (1978). Moreover, even if the conduct of Manchester Fund's counsel did not amount to fraud or concealment, the mis-indexed Notice of Lis Pendens is not part of the public record. This is so, according to First American, because proper recording and indexing are essential to the proper functioning of our title record system. Palamarg Realty Co. v. Rehac, 80 N.J. 446, 404 A.2d 21 (1979) ("a subsequent purchaser will be bound only by those instruments which can be discovered by a `reasonable' search of the particular chain of title").
In Palamarg Realty Co. v. Rehac, 80 N.J. at 461, 404 A.2d 21, the New Jersey Supreme Court observed that "the art of title searching, upon which so much of our conveyancing practice rests, has been created in very large part without the aid of legislation and has received little attention in judicial decisions." Nonetheless, N.J.S.A. 46:20-4 requires that "the county recording officer of each county shall keep... an alphabetical index of all the names of the grantors in deeds .... that may be presented to him for record, which alphabetical index shall be made ... on the same day, or on the day following, that they are received for record ." These alphabetical "grantor""grantee" index books are essential for title searchers to complete their searches.
By custom, the name of each owner of the property is searched from the date of the deed by which title is acquired to the date of recording of the deed by which title is relinquished. Fineberg, Handbook of New Jersey Title Practice, § 803 (New Jersey Land Title Inst.1995). In the absence of these indices there would simply be too many record books to permit a title searcher to address these original entries. A successful title search depends on the correct spelling and indexing of each owner and claimant in the chain of title. N.J.S.A. 46:20-3 significantly assists the search process by requiring that:
All deeds and other instruments of the nature or description set forth in section 46:16-1 of this title shall be indexed in the names of the several parties thereto, by and to whom the same are made, executed and delivered....
In Howard Savings Bank v. Brunson, 244 N.J.Super. 571, 575, 582 A.2d 1305 (Ch.Div.1990), the Chancery Division, Essex County, recognized that the purpose of the Recording Act was "to provide notice to subsequent parties in interest and [to protect] ... `purchasers and encumbrancers of real property against undisclosed titles and liens.'" In that case, Brunson had borrowed funds from Howard Savings Bank secured by a mortgage. The mortgage was properly recorded but not properly indexed for close to two years thereafter. In the interim, Brunson obtained several additional mortgages and subsequently sold the property to two different purchasers. One of them recorded his deed on November 4, 1987, prior to the correction of the indexing error on the Howard Savings Bank mortgage. Based on a title search and an October 5, 1987 affidavit of title signed by Brunson, representing that he had not allowed any legal interest to be created which would *745 affect ownership or title, Chicago Title Insurance Company issued a title insurance policy for the property. Thereafter, Howard Savings Bank sought to foreclose claiming that its mortgage was not satisfied out of the proceeds Brunson received and that its mortgage had priority.
Thus, the Howard Savings Bank court was required to decide whether constructive notice to a subsequent purchaser is given "through the mere recordation of a mortgage or whether notice is achieved only if the mortgage is also properly indexed." Howard Savings Bank v. Brunson, 244 N.J.Super. at 575-576, 582 A.2d 1305. After studying title searching procedures, the court came to the conclusion that, absent alphabetical indices, title searchers could not perform their jobs because of the staggering volume of record books which would have to be hand searched absent an indexing system. Consequently, the court found that an instrument such as a mortgage or deed could not be considered duly recorded so as to provide constructive notice in the absence of proper indexing. Id. at 577, 582 A.2d 1305.
Other trial level courts in New Jersey also have concluded that the grantor-grantee indices are part of the public record. Security Pacific Finance Corp. v. Taylor, 193 N.J.Super. 434, 442, 474 A.2d 1096 (Ch.Div.1984).[5] ("It cannot seriously be disputed that the index is a part of the record and that a purchaser or mortgagee has a duty to see to it that his instrument is properly recorded and indexed."). Given the Supreme Court's repeated concern that "a purchaser should be charged only with such notice from the records as can be ascertained by a reasonable search of those records," Sonderman v. Remington Const. Inc., 127 N.J. 96, 109, 603 A.2d 1 (1992), quoting, Donald B. Jones, "The New Jersey Recording ActA Study of Its Policy," 12 Rutgers L.Rev. 328, 335 (1957), this Court finds that the grantor-grantee indices are part of the public record. Furthermore, since the Notice of Lis Pendens was mis-indexed, the Court finds that the Notice of Lis Pendens was not part of the public records for purposes of providing constructive notice under the Recording Act. Nor does the mis-indexed Notice qualify as a "Public Record" as defined in the AGREEMENT TO ISSUE POLICY provided to Manchester Fund by First American in February of 1997.
The title insurance commitment provided by First American to Manchester Fund required that Manchester Fund "tell [the insurance company] in writing the name of anyone not referred to in the Commitment who will gain an interest in the land." Moreover, the title insurance policy itself expressly excludes:
[d]efects, liens, encumbrances, adverse claims or other matters: .... (b) not known to the [insurance company], not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured prior to the date the insured claimant became an insured under this policy; ....
The Court finds that Manchester Fund was aware of an adverse claim, the Notice of Lis Pendens, which was not part of the public record. When Manchester Fund failed to disclose the adverse claim of the United States before the company's issuance of the title insurance policy, it triggered the express exclusion and it was neither entitled to coverage nor the provision of a defense. The Court finds that First American was within its rights when it denied coverage in its May 2, 1997 letter to Manchester Fund.
*746 The Court understands that the policy of this State is to view an insurance contract as one of adhesion. Accordingly, "courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness," Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992). Further, when the meaning of a phrase in the insurance contract is ambiguous, the ambiguity is resolved in favor of the insured and in line with insured's objectively reasonable expectation. Id. at 175, 607 A.2d 1255. Finally, "if an insured's `reasonable expectations' contravene the plain meaning of a policy, even .... [the policy's] plain meaning can be overcome." Id. at 175, 607 A.2d 1255.
Still, courts "should not write for the insured a better policy of insurance than the one purchased." Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990). When all is said and done "an insurance policy should be interpreted according to its plain and ordinary meaning." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. at 175, 607 A.2d 1255, citing, Longobardi v. Chubb Ins. Co., 121 N.J. at 537, 582 A.2d 1257. Here, there are no ambiguities in the policy language itself.
Instead, this case presents the question of how the risk of loss should be allocated between two innocent entities. Neither the insurance company nor Manchester Fund had the ability to discover the existence of the Notice of Lis Pendens. Between the time the insurance company made the commitment to issue the title insurance policy and the policy's issuance, Manchester Fund learned of the adverse claims of the United States. Had the policy been issued when neither party knew of the claims, the risk of loss would have fallen on the insurance company. But that is not the case here. Rather, Manchester Fund and its counsel discovered the claim before the title insurance policy was issued and were obligated to provide written notice of the adverse claim to First American or risk the claim be excluded from coverage.
In sum, the Court is convinced that the insurance binder and the title insurance policy itself required the written disclosure by Manchester Fund of any adverse claims it was aware of and were not a matter of public record. Since the Court believes that the recorded, but mis-indexed Notice of Lis Pendens, did not provide constructive notice of the adverse claim of the United States, Manchester Fund's failure to provide written notice of the claim triggered the express exclusion in the policy. Accordingly, summary judgment is granted in favor of First Jersey and First American.
NOTES
[1] Victor Matos Peralta died in 1996 and Gloria Reynoso became the record owner as a tenant by the entireties. United States v. 1993 Bentley Coupe, 986 F.Supp. 893, fn. 2 (D.N.J.1997).
[2] The Record, headquartered in Hackensack, New Jersey, is a regional newspaper servicing the northern New Jersey area with a daily circulation of approximately 142,000 readers.
[3] The Court is not suggesting that any fraud took place in this matter. Counsel for Manchester Fund made no mis-representations to First American. Rather, he read the policy and made a determination that, based on the policy language, Manchester Fund was not required to provide the information. While the Court has determined that judgment was wrong, it does not believe it was made in bad faith.
[4] The AGREEMENT TO ISSUE POLICY notes that, "`Public Records' means title records that give constructive notice of matters affecting your title according to the state statutes where your land is located."

Manchester Fund argues that even if there is ambiguity as to whether the mis-indexed Notice of Lis Pendens is part of the public record, such an ambiguity must be resolved in its favor. Since insurance policies are adhesion contracts, our Supreme Court has observed that: "[w]hen the meaning of a phrase... [in an insurance agreement] is ambiguous, the ambiguity is resolved in favor of the insured, and in line with an insured's objectively-reasonable expectations." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992). But that is not the issue here. Rather, the question is which innocent party must suffer the risk of loss where the Notice of Lis Pendens is mis-filed.
[5] Several New Jersey courts have held that the indices are not part of the public record so that a properly recorded deed even if mis-indexed, does provide constructive notice as to subsequent purchasers. Lakewood Township v. Block 251, 48 N.J.Super. 581, 589, 138 A.2d 768 (App.Div.1958); Schwartz v. Grunwald, 174 N.J.Super. 164, 415 A.2d 1203 (Ch.Div.1980). Both cases relied on Semon v. Terhune, 40 N.J.Eq. 364, 2 A. 18 (Ch.1885) and its progeny.